Moses M. Weinstein J.
In this mortgage foreclosure action, plaintiff moves: (1) to strike the answer of defendant Dorothy L. Screen; (2) for summary judgment; (3) for the appointment of a referee to compute; and (4) to amend the summons and complaint and notice of pendency by deleting the fictitious names "John Doe” and "Jane Doe”.
Defendant Screen executed and delivered the bond and mortgage at issue to the Federal National Mortgage Association (FNMA) on October 27, 1967 in the principal sum of $17,100, bearing interest at the rate of 6% per annum. Monthly payments of principal, interest and taxes total $187. The bond and mortgage were thereafter acquired by the plaintiff, Government National Mortgage Association, pursuant to the provisions of the Housing and Urban Development Act. Admittedly, plaintiff has made no mortgage payments since January, 1974. The default resulted in an acceleration of the mortgage and this action was commenced on January 11, 1975.
Defendant Screen appears pro se. The thrust of the defense is the alleged failure of plaintiff to comply with certain HUD regulations (24 CFR 203.340, 203.342; HUD Handbook FHA 4191.1 dated April 18, 1974 and entitled Administration of Insured Home Mortgages) relating to forbearance relief in avoidance of foreclosure. The avowed purpose of the Federally-insured mortgage was to provide a decent home and a suitable living environment for every American family (US Code, tit 42, § 1441.) Amendments to the operative sections over the *88 years have responded to the demands of low income families facing severe housing shortages by permitting mortgagees to accept limited down payments, reduced interest rates and longer maturity dates. (See US Code, tit 12, § 1709, subd [b], pars [3], [5], [9].) Mortgagees participate in the program only after satisfactorily demonstrating to HUD their ability to service the mortgage properly.
Avoidance of foreclosure is of paramount concern and mortgagees are expected to utilize acceptable methods of forbearance relief wherever feasible and wherever it is reasonable for a mortgagee to believe that the mortgagor can or will resume the mortgage payments. Several forms of forbearance are available, voluntary withholding of foreclosure, special forbearance relief and recasting of the mortgage. (Brown v Lynn, 385 F Supp 986, 990.) That these forbearance regulations are merely permissive and do not have the force of law has been ably demonstrated. (Brown v Lynn, supra, mot to reconsider den 392 F Supp 559; Federal Nat. Mtge. Assn. v Ricks, 83 Misc 2d 814.) Thus, in Brown v Lynn (supra, pp 997-998) the court stated:
"The plaintiffs assert in Counts II and IV that the defendants are guilty of violating federal regulations by not pursuing prescribed alternatives before resorting to foreclosure. The regulations relied upon by the plaintiffs are 24 C.F.R. §§ 203.9, 203.340, 203.342, and 203.350. Of these, only § 203.9 is couched in mandatory terms. It deals with the qualifications and responsibilities of mortgagees and requires them to adopt the practices of a prudent lending institution when servicing mortgages under these programs. * * *
"They maintain that, under the circumstances facing the plaintiffs in this case, a prudent lending institution would not only defer foreclosure proceedings, but would also actively pursue alternatives which would afford the mortgagors an opportunity to become current. They point to the other aforementioned regulations as well as the HUD guidelines as a source of these alternatives, which include, inter alia, accepting partial payments, recasting the mortgage, or assigning the mortgage to the FHA.
"While in many instances such alternatives are certainly preferable to foreclosure, the plaintiffs’ reliance on § 203.9 as a means of enforcing these alternatives is misplaced. * * * Based upon the language of § 203.9, we do not find the *89 foreclosure decisions of the defendant mortgagees to be so imprudent as to require court interference.
"Nor may the plaintiffs rely upon the other regulations to prevent alleged precipitous foreclosures by mortgagees. These regulations unfortunately are clearly expressed as alternatives which the mortgagees may turn to if they so choose. They are not obligatory directives. By virtue of the permissive language present in each regulation, the defendant mortgagees are not compelled to follow these measures in lieu of foreclosure.”
It must be remembered that Brown was an action for monetary damages in addition to declaratory and injunctive relief. Thus, the court felt impelled upon reconsideration to issue the following dicta: "On the theory that the guidelines are sensible, equitable standards of conduct, consistent with, and issued in furtherance of, the national housing goals, foreclosure courts can, and in appropriate instances should, direct the parties to pursue and exhaust the alternatives to foreclosure enumerated in the Handbook. Merely rubber-stamping mortgagees’ foreclosure actions, when they have acted barely within the formal legal bounds of these loosely defined housing programs, will contribute further to the needless loss of homes and to the creation of virtual ghost areas within our inner cities. Foreclosure courts need not woodenly perpetuate the national tragedy surrounding quick foreclosures to which we referred in our earlier opinion, but, where appropriate, they should require adherence to the policies and procedures prescribed by the Handbook. Such an approach is not inconsistent with our rulings herein.” (Brown v Lynn, 392 F Supp 559, 563, supra.)
The approach has been adopted in two other instances where the defense has been raised to an action to foreclose a mortgage. In Federal Nat. Mtge. Assn. v Ricks (supra), Mr. Justice Heller denied a motion to dismiss the identical defense as asserted in the instant case, concluding that the failure of participating mortgagees or their assignees to follow the guidelines may constitute unconscionable conduct so as to deny the mortgage foreclosure and leaving the issue of the extent to which the mortgagee must comply with the HUD Handbook or whether it had complied to the trial court. In an unreported decision of the Illinois Circuit Court of Cook County, FNMA v Huffman (No. 73-CH-7453), cited in Ricks, the court, after trial, held that plaintiff’s failure to follow *90 alternatives to foreclosure did constitute a bar to the foreclosure action.
Brown and Huffman were examples of egregious conduct on the part of the mortgagee. In Brown v Lynn (385 F Supp 986, 989, supra) the mortgagors alleged: "[T]hat the mortgagees made no attempt during the delinquency period to ascertain the cause or status of the plaintiffs’ financial plight, but after some months of arrearages, regardless of the plaintiffs’ interim efforts and payments, they referred the matter to their attorneys for collection. These attorneys would then return all interim payments along with notice that unless they receive total payment of all delinquent installments plus rather substantial attorneys’ fees ostensibly representing collection services, they would institute foreclosure proceedings. After approximately two weeks, even if the plaintiffs tendered the requested mortgage payments in full, unless the attorneys’ fees were also included, the mortgagees’ attorneys would proceed with foreclosure. This action would impose further costs and fees upon the mortgagors.”
In Huffman full tenders of all arrearages were also refused where substantial counsel fees were not included. "[I]f [in fact] their allegations are true, and they are in fact losing their homes largely because of attorneys’ fees, we find such conduct to be unconscionable.” (Brown v Lynn, supra, p 993.) The case at bar is clearly distinguishable.
The instant plaintiff seeks summary judgment. In opposition to such a motion, it is incumbent upon the defendant to lay bare the facts upon which the defense is predicated, thereby raising a factual issue, the determination of which requires a trial. On April 10, 1974 defendant wrote to the State Funding Corporation, the servicing agent for plaintiff, in which she stated that she had on many occasions communicated with them concerning the reasons for her default, to wit, that she was intermittently ill and in fact required periods of hospitalization, from September to November, 1973; that disability benefits were payable only after a six-month waiting period; and that she had an uncollected claim against the City of New York relating to income-producing property for which welfare recipients had not paid rent and which they had allegedly vandalized. In that letter, defendant further stated: "I offered to pay the taxes on the house.” On April 23, 1974 State Funding Corporation reported to the mortgagee the status of defendant’s delinquency, indicating that it had contacted de *91 fendant on February 11, 14, 19, 28, 1974, March 11 and April 22, 1974. The report stated:
"Contact with Mrs. Screen discloses that she is unemployed due to illness. She claims that she has been anticipating receipt of social security disability benefits. She also claims that anticipated receipts from an income producing property has not been forthcoming from the City of New York.
"Mrs. Screen believes that these matters are on the verge of being resolved and will result in funds forthcoming in May. She proposes to pay the escrow portion of her account temporarily for the past due installments and thereafter to pay the principal and interest when her anticipated funds are forthcoming.
"We therefore request permission to accept the escrow portion of her account temporarily. We also recommend forbearance to afford the mortgagor the opportunity to complete this arrangement.”
Authorization from FNMA to follow such a course of action was issued on April 30, 1974. On June 6, 1974 the State Funding Corporation once again reported on defendant’s status: "Mrs. Screen fails to pay the escrow portion of her arrears as outlined in Form 145, dated 4/23/74. She sent a telegram on May 17th which we considered to be ambiguous. We were able to reach her by telephone but she would not discuss her account. She ignores our last communication which included a request that she visit our office. Accordingly, we wish to change our recommendation to foreclosure.”
Defendant does not deny the accuracy of these reports nor does she indicate any reason, other than asserting that she did not have the funds, for her failure to abide by her own agreement. Defendant contends that plaintiff always insisted on payment of the full amount of arrearages but the communications indicate that it was at her behest that such a method of payment was arrived at. There is nothing to indicate that disability benefits were not paid, that the claim against the city was not settled, that the income-producing property was no longer producing income or that defendant was unable to work. Nor is there any evidence that defendant attempted to tender payment of any kind. It must be noted that this action was not commenced for one year from the date of the initial default and six months after the recommendation of the State Funding Corporation. "[W]e are nonetheless distressed by the fact that low income mortgagors appear *92 to be losing their homes because of illness, temporary unemployment, or similar emergencies, which have caused them to temporarily default in their mortgage payments. This is not to suggest that all named mortgagees and their agents, or for that matter, most mortgagees and their agents, do not generally deal fairly and compassionately with mortgagors facing financial crises. Nor do we wish to paint all mortgagors as unfortunate and abused victims of callous indifference on the part of the mortgagees. We recognize that some mortgagors take unfair advantage of these programs and that mortgagees do indeed have investments to protect. We are only disturbed by what, in some instances, appears to be impossible burdens for these particular plaintiffs to overcome in order to save their homes, burdens imposed contrary to both HUD guidelines and the Congressional objectives set forth in the applicable statutes.” (Brown v Lynn, supra, p 994.)
The facts of the instant case belie defendant’s castigation of plaintiff as an imprudent and callous lender. Plaintiff has adequately serviced the mortgage; has agreed at one point to forbearance and has voluntarily withheld foreclosure for one year. Nothing contained in the papers or the communications of the parties would lead a prudent lender to the conclusion that any course of action it might take would result in the payment of this mortgage. Inaction could only have delayed the inevitable. It is the opinion of this court that defendant has failed to raise a triable factual issue. Accordingly, the motion is granted in its entirety.
Submit order and provide therein for the appointment by the court of a referee to compute.