FEDERAL NATIONAL MORTGAGE ASSOCIATION v WINGATE

Docket No. 60121. Argued June 6, 1978 (Calendar No. 5).—Decided
January 8, 1979.

Federal National Mortgage Association brought summary pro-
ceedings for possession of premises against Carolyn Wingate
and Mary Brown after foreclosure of mortgages in default on
their homes and sale of the property to FNMA, the assignee of
the mortgagee. The Common Pleas Court of Detroit, Landlord
and Tenant Division, George D. Kent, J., granted summary
judgments of possession for the plaintiff. The defendants filed
claims of appeal in Common Pleas Court and the cases were
consolidated. The defendants filed affidavits that they were
unable to obtain sureties or make a cash deposit. The Common
Pleas Court, Arthur M. Bowman, J., set bonds on appeal to stay
the issuance of the writs of restitution, with the conditions that
defendant Wingate pay 108% of her monthly mortgage pay-
ment of $232 for each month since the expiration of the period
for redemption from the sale on foreclosure, and that defendant
Brown pay 110% of her monthly mortgage payment of $194 for
each month since the expiration of the redemption period. The
Wayne Circuit Court, Joseph A. Moynihan, Jr., denied the
defendants' motions to amend the bond. The Court of Appeals,
J. H. Gillis, P.J., and Bashara and D. C. Riley, JJ., denied leave
to appeal (Docket No. 77-2712). Defendants appeal, limited to
the issue of the reasonableness of the appeal bond. *Held:*

1. The right to appeal is not required under common-law
principles or due process. It is generally legislatively granted
and can be conditioned on any reasonable basis. An appeal
bond is one of the conditions imposed to protect the appellee

REFERENCES FOR POINTS IN HEADNOTES
[1] 4 Am Jur 2d, Appeal and Error § 1.
[2, 6, 9] 5 Am Jur 2d, Appeal and Error §§ 332, 333.
[3] 5 Am Jur 2d, Appeal and Error § 1059.
[4] 5 Am Jur 2d, Appeal and Error §§ 332-334.
[5] 5 Am Jur 2d, Appeal and Error §§ 1024, 1058.
[7] 4 Am Jur 2d, Appeal and Error § 323.
[8, 11] 5 Am Jur 2d, Appeal and Error § 1055.
[10] 5 Am Jur 2d, Appeal and Error §§ 772-775.

during the pendency of the appeal, which may be waived in the case of an indigent appellant. In this case, however, there is no contention that the bond requirement should be waived. The defendants argue that their appeal bonds were not set on reasonable conditions under the governing Common Pleas Rule because the bonds contained penalties and included sums which became due prior to the appeal.

2. The definition of "reasonable condition" in the District Court Rule governing bond on appeal where a judgment for possession has been entered for the plaintiff makes it clear that the bond can only include amounts due after the time of appeal. This definition in the District Court Rule is made applicable by General Court Rule to proceedings in Common Pleas Court.

3. This limitation in the District Court Rule is supported by case law which holds that the scope of an appeal bond must logically relate to its purpose or the right which the bond is meant to protect. The object of an appeal bond is the saving of all rights of the appellee during the pendency of the appeal as an indemnity against *further trouble*. In these cases the only further trouble which might accrue to the appellee during the appeal is the loss of payments which could become due during that period. By setting bonds upon reasonable conditions to prevent this loss, the Common Pleas Court could have complied with both the spirit and letter of the law. To go further and require payments which became due *before* an appeal was sought is not within the proper objective of such an appeal bond.

4. The former General Court Rule concerning bond on appeal treats the "amount" and "conditions" of the appeal bond as separate. The "conditions" under which a bond is to be given are the promises or assurances made by the appellant in conjunction with a bond to stay proceedings. The appellant is required to prosecute his appeal with all due diligence and to pay the amount of the judgment if one is rendered against him. These conditions cannot logically affect the "amount" of the bond which must be secured *before* the stay and is fully prescribed in another subdivision of the former court rule. Furthermore, the requirement that the appellant pay "damages" from the time of demand for possession of the land does not authorize an increase in the "amount" of the bond. The only logical interpretation of the former General Court Rule is that all three, "amount", "conditions" and "damages", are to be promised prior to the granting of a stay of proceedings on appeal. Although the present rule was not in effect at the time

these appeal bonds were set, it retains the same distinctions. There is no authority in these rules for extending the appeal bond beyond its purpose, and beyond an amount required as a "reasonable condition".

5. A penalty provision is mandatory under the Court of Common Pleas Rule as an additional protection against frivolous appeal. However, the "reasonable condition" requirement must also be given effect where an appellant is unable to obtain sureties. This examination involves an analysis of what penalty is reasonable in light of the appellant's financial circumstances. In these cases the record shows that an appeal bond set too far beyond the monthly mortgage payment as it becomes due during the appeal would preclude the exercise of the right to appeal. Defendant Wingate's affidavit shows that she had three children, a take-home pay of $169.67 per week, child support of $37 per week, personal savings and belongings of approximately $125, medical debts of approximately $2,000 and a family which was unable to assist her financially. Defendant Brown's affidavit shows that she had two children, a take-home pay of $220 per week, had no debts but also had no additional sources of income, had personal belongings and savings of less than $100 and a family which was unable to assist her financially. These financial circumstances do not disclose any reason for the amount of the penalty and the Common Pleas Court, in assessing it, gave none. Therefore, on remand, when the trial court determines the proper penalty to be assessed, the reasons for doing so should be given so that if there is further appeal, a proper decision can be made in light of the whole record.

6. The Court does not question the need to protect the rights of an appellee in the case of a stay pending appeal. The appellee's rights and interests are considerable and are recognized in both the court rules and case law of this jurisdiction. At the same time, there is no authority for going further and hindering the right to stay pending appeal by forcing an appellant to give more than is required to protect the appellee's rights.

Reversed and remanded for entry of an appeal bond consistent with the opinion.

Justice Fitzgerald, joined by Justice Ryan, dissented:

1. The Common Pleas Court Rule governing an appeal bond to stay the issuance of a writ of restitution in summary proceedings clearly leaves it to the trial court's discretion to determine the "reasonable conditions" upon which an appeal bond without sureties or cash deposit may be set.

2. The object of the appeal bond is to save all the rights of

the appellee without prejudice or diminution during the pendency of the appeal, and at the same time to prevent frivolous, vexatious, and unnecessary appeals. In these cases the plaintiff acquired the right of possession of the premises, or the fair rental value for them, at the expiration of the redemption period. Hence, the Common Pleas Court fixed the appeal bond in each case at the amount of the monthly mortgage payments for each month beginning at the end of the redemption period. The propriety of setting the appeal bonds to include payments back to the expiration of the redemption period is further supported by the general court rule which controls bonds in appeals to circuit court.

3. The defendants' argument that "reasonable conditions" are not adequately defined by the Common Pleas Rules so that reference should be made to the district court rules and that their appeal bonds should have included only payments "due after the time the appeal is filed" is unpersuasive. Each court is obligated to follow its own court rules, and the procedure in Common Pleas Court for fixing appeal bond in summary proceedings for possession of premises is governed by that court's rule.

4. The question is whether the trial court abused its discretion in setting the defendants' appeal bonds. Appellate review of a trial court's exercise of judicial discretion has been narrowly limited. In order to have an "abuse", the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.

5. In these cases, defendant Wingate had an after-tax income of $8,822.84 per year and received $1,924 per year in child support. Defendant Brown had an after-tax income of $11,440 per year. At the time the trial court fixed the appeal bonds, defendant Wingate had not made a mortgage payment in more than 21 months and defendant Brown had not made a mortgage payment in more than 17 months. One of the primary objects of an appeal bond is to prevent frivolous appeals. That end would not be well served by merely requiring defendants to resume making their monthly mortgage payments as of the date they filed claim of appeal. There was no abuse of discretion by the trial court in setting defendants' appeal bonds.

OPINION OF THE COURT

1. APPEAL AND ERROR — RIGHT TO APPEAL — DUE PROCESS.
    The right to appeal is not required under common-law principles

or general notions of due process; it is generally legislatively granted and can be conditioned on any reasonable basis.

2. APPEAL AND ERROR — COURT RULES — COMMON PLEAS COURT — SUMMARY PROCEEDINGS — APPEAL BOND.

The Common Pleas Court Rules and the General Court Rules do not define "reasonable conditions" upon which an appeal bond without sureties or cash deposit may be set in summary proceedings for possession of premises; however, the General Court Rules require the application of the District Court Rule, which does define the term (GCR 1963, 754.9; DCR 754.10[3]; CPR 39; CPR 46.11[c]).

3. APPEAL AND ERROR — SUMMARY PROCEEDINGS — APPEAL BOND — REASONABLE CONDITIONS — WORDS AND PHRASES.

An appeal bond set on "reasonable conditions" in summary proceedings for possession, as required in the case of defendants who cannot obtain a surety, can only include amounts due after the time of appeal where the only further trouble which might accrue to the appellee during the appeal is the loss of payments which might become due during that period (DCR 754.10[3]).

4. APPEAL AND ERROR — APPEAL BOND — STAY OF PROCEEDINGS — COURT RULES.

The General Court Rule governing stay of proceedings on appeal to circuit court treats the "amount" of the bond and the "conditions" as separate; the "conditions" under which the appeal bond is to be given are by their very language meant to be promises or assurances made by the appellant in conjunction with an appeal bond to stay proceedings and all three of the conditions listed are to be promised prior to the granting of a stay of the proceedings (GCR 1963, 701.8).

5. APPEAL AND ERROR — APPEAL BOND — COURT RULES — COMMON PLEAS COURT — SUMMARY PROCEEDINGS.

The mandatory "penalty" provision of the Common Pleas Court Rule concerning an appeal bond in summary proceedings must be examined in the context of reasonability where the appellant is unable to obtain a surety and the appeal bond must be set on reasonable conditions; this involves an analysis of how much of a penalty is reasonable in the appellant's circumstances (CPR 46.11[c]).

DISSENTING OPINION BY FITZGERALD, J.

6. APPEAL AND ERROR — SUMMARY PROCEEDINGS — COMMON PLEAS COURT — APPEAL BOND.

*The rules of the Common Pleas Court of Detroit governing an*

*appeal bond to stay the issuance of a writ of restitution in summary proceedings for possession of premises clearly leaves it to the trial court's discretion to determine the "reasonable conditions" upon which an appeal bond without sureties or cash deposit may be set (CPR 46.11[c]).*

7. APPEAL AND ERROR — APPEAL BOND.

*The object of an appeal bond is to save all the rights of the appellee without prejudice or diminution during the pendency of the appeal, and at the same time to present frivolous, vexatious, and unnecessary appeals.*

8. APPEAL AND ERROR — SUMMARY PROCEEDINGS — COMMON PLEAS COURT — APPEAL BOND.

*The Common Pleas Court of Detroit may, in its discretion, fix an appeal bond in a summary proceeding for the possession of premises sold in foreclosure of a mortgage at the amount of the monthly mortgage payment for each month beginning at the end of the redemption period where the plaintiff has acquired the right to possession of the premises, or to receive the fair rental value for them (CPR 46.11[c]).*

9. APPEAL AND ERROR — COURT RULES — COMMON PLEAS COURT — SUMMARY PROCEEDINGS — APPEAL BOND.

*Each court is obligated to follow its own court rules; the procedure in Common Pleas Court of Detroit for fixing bond on appeal in summary proceedings for possession of premises is governed by the applicable Common Pleas Court Rule, and does not need interpretation by reference to the District Court Rules (CPR 46.11[c], DCR 754.10.[3]).*

10. APPEAL AND ERROR — DISCRETION.

*Appellate review of a trial court's exercise of judicial discretion is narrowly limited; in order to reach a determination of "abuse", the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion.*

11. APPEAL AND ERROR — SUMMARY PROCEEDINGS — COMMON PLEAS COURT — APPEAL BOND.

*The Common Pleas Court of Detroit did not abuse its discretion in setting defendants' appeal bonds in summary proceedings for possession of premises after sale on foreclosure of mortgages in default at 108% of the monthly mortgage payment of $232 and 110% of the monthly mortgage payment of $194 for each month since the expiration of the redemption period where the*

*first defendant had an after-tax income of $8,822.84 and received $1,924 per year in child support, and had not made a mortgage payment in more than 21 months, and the second defendant had an after-tax income of $11,440 per year, and had not made a mortgage payment in more than 17 months (CPR 46.11[c]).*

*Hoops & Hudson* (by *Robert A. Hudson* and *David R. Haarz)* for plaintiff.

*Conrad W. Smith* for defendants.

WILLIAMS, J. The underlying import of our decision today is to determine whether working people with few assets are to have access to the appellate process, or are to be precluded from appeal by requiring excessive appeal bonds. These cases, consolidated on appeal from the Landlord-Tenant Division of the Common Pleas Court of Detroit (hereinafter Landlord-Tenant Court), involve the attempts of two working mothers to remain in homes they were purchasing pending appeal of what they claim were invalid foreclosures of their federally insured mortgages. This Court granted leave to consider whether the defendants' appeal bonds, imposed to accomplish a stay in execution of writs of restitution, were properly set under the applicable court rule. We find that they were not.

The Common Pleas Court Rule 46.11 requires a bond set on "reasonable conditions". While that term is not defined in CPR 46.11, other sections ultimately lead us to DCR 754.10(3), the only available source defining "reasonable conditions". DCR 754.10(3) states in relevant part:

"[T]he reasonable condition for a defendant-appellant shall be that he shall pay into the trial court within five days of the date rent or payments are due under

the lease or contract, a sum equal to the reasonable rental value of the premises, as determined by the court, as *it becomes due after the time the appeal is filed and during the pendency of the appeal."* (Emphasis added.)

Because "reasonable conditions" only include amounts that become due *after* the time of the appeal, and because appellants' bonds were set so as to include amounts that became due *prior* to the time of the appeal, the bonds in this case were clearly not set on "reasonable conditions". We therefore reverse and remand to the trial court to set bond in accordance with this opinion.

## I. FACTS

Defendant Carolyn Wingate, a working mother supporting her three children, bought her home in the City of Detroit on February 28, 1974. Absent a special program, Mrs. Wingate could not have made such a purchase because she had neither sufficient income nor assets to qualify for a conventional mortgage. She was able to effectuate the purchase of her own home only through Federal programs established by the Department of Housing and Urban Development (hereinafter HUD). See § 235 of the National Housing Act, 12 USC 1715z *et seq.*

Pursuant to these programs, Mrs. Wingate executed a mortgage to Century Mortgage Corporation, which mortgage was first assigned to Continental Acceptance Corporation (hereinafter Continental), and thereafter assigned to Federal National Mortgage Association (hereinafter FNMA). Under a contract with FNMA, Continental acted as the servicing agent for the Wingate mortgage.

Mrs. Wingate was laid off by her employer No-

vember 26, 1974, and was not called back to work until June, 1976. She was, therefore, unemployed for a period of 18 months. Presumably as a result of this, she fell slightly behind in her mortgage payments but was able to become current as of April, 1975. However, her next payment was not forthcoming until July 2, 1975, and her last payment was made October 22, 1975.

Mrs. Wingate and Continental entered into a "forbearance agreement" which required the mortgagor to make double payments for a period of three months. Upon failure of the mortgagor to make further payments, FNMA, on March 15, 1976, hired a law firm to commence foreclosure proceedings.

Pursuant to foreclosure, a public sale of the property was held on April 29, 1976, at which FNMA was the highest bidder and acquired a sheriff's deed to the property.

On September 29, 1976, Continental, still acting as servicing agent for FNMA, caused a 30-day notice to quit to be sent to Mrs. Wingate, and on January 5, 1977, summary proceedings were commenced in Landlord-Tenant Court. Mrs. Wingate attempted to present affirmative defenses to the summary proceedings,[1] but these were ultimately disallowed and on April 21, 1977 a summary judgment was granted in favor of plaintiff FNMA.

On November 31, 1973, Mary Jo Brown, a working mother supporting two children, executed a mortgage pursuant to the same HUD program involved in the Wingate mortgage and was thereby able to purchase a home in the City of Detroit. The mortgage was executed to Century Mortgage Corporation, subsequently assigned to Continental

---

[1] See part III, *infra,* for a discussion of defendants' affirmative defenses.

and finally assigned to FNMA. Mrs. Brown commenced mortgage payments on January 24, 1974 and was current on her mortgage as of October, 1975, despite the fact that she was laid off work for a 38-month period commencing December, 1973. She did not return to work until February, 1977.

Mrs. Brown's last mortgage payment was made in February, 1976 and in June of that year, Continental contacted attorneys for the purpose of foreclosing on the Brown mortgage. On September 2, 1976, the Brown home was sold at public sale. Again, FNMA was the highest bidder and acquired a sheriff's deed to the property.

On February 2, 1977, Continental, as servicing agent for FNMA, caused a 30-day notice to be sent to Mrs. Brown, and on March 15, 1977, summary proceedings were commenced. As in the case of Mrs. Wingate, Mrs. Brown's affirmative defenses were disallowed and on April 29, 1977, a summary judgment was granted by the Landlord-Tenant Court in favor of plaintiff, FNMA.

When Mrs. Wingate and Mrs. Brown both sought appeal to the circuit court based on a disallowance of the same affirmative defenses, their claims were consolidated for purposes of judicial economy. Appellants sought to have their appeal bonds set at the amount of the monthly mortgage payment for each month beginning with May 2, 1977, the date of the claim of appeal. However, on June 27, 1977, the Common Pleas judge denied their motion and ordered the bonds set as follows:

a) for Carolyn Wingate, 108% of the monthly mortgage payment of $232, for each month since the claim of appeal, plus six months of back payments, to be paid by the 5th of each month. The

first payment due July 5 thus included the nine
months of November through July at $250.56 per
month, or $2,255.04 to be paid within a week.

b) for Mary Brown, 110% of the monthly mort-
gage payment of $194, for each month since the
claim of appeal, plus two months of back pay-
ments, to be paid by the 5th of each month. The
first payment due July 5 thus included the nine
months of March-July at $213.40 per month, or
$1,067 to be paid within a week.[2]

On July 1, 1977, defendants moved to reduce the
appeal bonds in the Wayne Circuit Court on the
grounds that they were set in violation of court
rules, were clearly excessive, would deprive them
of their right to an appeal, and would provide
appellee with an unwarranted windfall. On July
15, the Wayne circuit judge denied their motion.

On July 25, defendants filed an application for
leave to appeal to the Court of Appeals which was
denied on August 1, 1977.

On August 8, 1977, application for leave to
appeal was filed before this Court. Application was
granted October 25, 1977, with a subsequent clari-
fication of the issue granted on January 19, 1978.
In this final order, pursuant to appellee's motion

---

[2] In concluding his opinion in the instant case, Justice FITZGERALD
points out,

"At the time the trial court fixed the appeal bonds, defendant
Wingate had not made a mortgage payment in more than 21 months
and defendant Brown had not made a mortgage payment in more
than 17 months."

Defendants, in their motion to stay all proceedings pending decision
on application for leave to appeal to this Court, do not dispute this
fact, but state,

"[T]hese time periods are equivalent to the length of time it has
taken these proceedings to reach the present stage, and do not reflect
any willful or negligent refusal by the defendants to make payments.
Indeed, during the bulk of these time periods, plaintiff would not
accept any payment less than the complete outstanding mortgage
value, in violation of the HUD regulations which form the basis for
defendants' affirmative defenses."

for order setting bond pending appeal, the following order as to bond was handed down by this Court:

"Appellant Wingate shall pay into the Common Pleas Court a sum equal to the total of the former monthly mortgage payments which would have been due on the property since October 25, 1977, or $232.00, within seven days of the entry of this order, plus $232.00 to be paid by the 25th of each subsequent month, until the disposition of this appeal before this Court.

"Appellant Brown shall pay into the Common Pleas Court a sum equal to the total of the former monthly mortgage payments which would have been due on the property since October 25, 1977, or $194.00, within seven days of the entry of this order, plus $194.00 to be paid by the 25th of each subsequent month, until the disposition of this appeal before this Court.

"If either appellant fails to make any timely bond payments, the stay of proceedings shall be dissolved as to that particular defendant only. However, if said appellant shall pay the required bond payment late, but before the execution of the writ of restitution, the stay of proceedings shall be reimposed as to that particular appellant." 402 Mich 854 (1978).

According to the records in this Court, neither appellant has failed to comply with the order.

## II. Issue

The issue on which leave to appeal was granted is limited to whether the appeal bonds, as set by the Common Pleas Court and affirmed by the Wayne Circuit Court, are reasonable within the meaning of the applicable court rules, when they were set to include amounts owing prior to the appeal and penalties.

### III. BACKGROUND

It is difficult to understand the full import of this case without a discussion of the circumstances which comprise both the background of this litigation and the affirmative defense sought to be presented by defendants at the Landlord-Tenant Court.

The atmosphere of the Detroit Landlord-Tenant Court where these cases originated does not encourage deliberate, reasoned and compassionate justice, although it deals with one of the basic material essentials of life, a roof over one's head. Judges, litigants and court personnel are harassed and depressed. In many cases both the landlords and tenants are barely making it financially, and oftentimes they are not making it at all. Cases involve housing conditions that are not the most desirable. Consequently, relations are often strained and not infrequently beyond the breaking point. Many of the tenants do not understand their rights at all, although some understand them too well. Sometimes landlords are in the same posture. It would be difficult to handle these cases with justice in the best of circumstances. But circumstances are far from the best. The case load is incredible. The court facilities are just a little better than tolerable. Matters that can be avoided are avoided. This may be what generated this case but is not in issue here. Operation under such conditions obviously causes need for appeal from time to time.

The underlying and real issue in this case, although not directly before us, involves the *availability of invalidity of foreclosure as a defense* in Landlord-Tenant Court. Appellants' claim of invalidity is based upon plaintiff's alleged noncompliance with rules promulgated by HUD, which deal

with the procedures a mortgagee should follow to avoid foreclosure.

The mortgages granted appellee by these women are fully insured by HUD. *The "price" the mortgagee is supposed to pay for this 100% HUD guaranty against loss of money is to seek flexible means of assisting the mortgagors to avoid the loss of their homes.* This is pursuant to the purpose of § 235 of the National Housing Act which is to provide a means through which the purchase of a home would be possible for persons of low to moderate income such as these defendants.

To further the basic goals of HUD, that agency issued the HUD Handbook 4191.1, *Administration of Insured Home Mortgages* (Washington, DC: April 18, 1974),[3] subsequent mortgagee letters, and

---

[3] Chapter 9 of the Handbook, which deals with acquisition of the property by the mortgagee, states:

"141. ACQUISITION—GENERAL. When the mortgagor either cannot or will not resume and complete the mortgage payments, the mortgagee shall take steps to acquire the property. *In cases where the default is caused by a hardship beyond the mortgagor's control, this decision shall be made only after all of the relief* measures described in *Chapter 8 have been considered, and the mortgagee has determined that none of them is likely to be effective in making it possible for the mortgagor to retain the property.* Once the decision has been made, however, such action shall not be delayed." (Emphasis added.)

See also Ch 7, ¶ 110 of the Handbook:

"REVIEW PRIOR TO BEGINNING FORECLOSURE ACTION. Foreclosure of a mortgage shall be undertaken only after the mortgagee or servicer has assured itself that the case has been handled in full accordance with the servicing practices outlined herein. When foreclosure is unavoidable, it shall be started promptly and pursued diligently in order to minimize the eventual loss.",

and Ch 9, ¶ 144,

"FORECLOSURE. *Foreclosure is a last resort and shall not be initiated until all other servicing actions have been exhausted.* HUD does not prescribe the method of foreclosure to be used by the mortgagee. The mortgagee is responsible for conveying good merchantable title to the property and for furnishing satisfactory title evidence when the property is conveyed to the Secretary, and the method of foreclosure is a concomitant to meeting this responsibility. Foreclosure shall be completed in accordance with local statutes and prevailing practices in the area in which the property is located."

recent Federal regulations. Chapter 8 of the Handbook deals with approved relief provisions.

"121. FORBEARANCE RELIEF. *Mortgagees are expected to make a concerted effort to avoid the foreclosure* or assignment of HUD insured mortgages, and to utilize acceptable methods of forbearance relief, wherever feasible. *Forbearance is available in several forms where it is reasonable for the mortgagee to believe that the mortgagor can and will resume the mortgage payments.* Any of the relief measures discussed in this Chapter may be used and *mortgagees are expected to refrain from foreclosure where it is determined that the case may be salvaged through the use of one or more of these procedures.*" (Emphasis added.)

Specifically, in the case of the borrower's unemployment or lay-off which are situations in which the mortgagee could be reasonably certain that payments would resume in the future, Chapter 8 of the HUD Handbook 4191.1 provides for forbearance (¶ 123 of the Handbook), recasting (¶ 125 of the Handbook) or assignment of the mortgage to HUD (¶ 126 of the Handbook).[4]

Although appellees assert that a "forbearance agreement" was unsuccessfully attempted in the *Wingate* case, as discussed in part I, that agreement required Mrs. Wingate to make *double* payments for a three-month period to bring her mortgage to a current status. Chapter 8 of the Handbook clearly demonstrates that this is not forbearance under HUD standards. Paragraph 123 of that chapter states that forbearance agreements can last up to 18 months without prior HUD approval, and that during this period the regular mortgage

---

[4] Paragraph 126 of the Handbook was superseded by a HUD directive of October 14, 1976, subsequent to the public sales of these defendants' homes. The newer directive elaborates upon the assignment procedure. See HM Mortgagee Letter 76-9, Acceptance of Assignment of Home Mortgages in Default (No N-76-653, May 17, 1976).

payment should be *reduced* or *suspended*. That paragraph goes on to assure the mortgagee who enters into a forbearance agreement that "it will receive, as part of its insurance settlement, unpaid mortgage interest, including all amounts accrued prior to the execution of the forbearance agreement * * * ". The flexibility demonstrated in the Handbook is apparently intended to avoid situations such as exist in the City of Detroit which has an abundance of both boarded-up HUD houses and poor people who cannot find places to live.

Certain recent cases have held that failure to comply with these rules could invalidate a foreclosure of a HUD-insured mortgage. *Brown v Lynn,* 385 F Supp 986 (ND Ill, 1974), *reh den* 392 F Supp 559 (ND Ill, 1975); *Federal National Mortgage Ass'n v Ricks,* 83 Misc 2d 814; 372 NYS2d 485 (1975); and *Government National Mortgage Ass'n v Screen,* 85 Misc 2d 86; 379 NYS2d 327 (1976). See, *contra, Roberts v Cameron-Brown Co,* 556 F2d 356 (CA 5, 1977); *Hernandez v Prudential Mortgage Corp,* 553 F2d 241 (CA 1, 1977).

While the availability of invalidity of foreclosure as a defense to summary proceedings is not presently at issue before this Court, and we do not conjecture as to what we would hold if it were at issue, we do note that defendants' present position has some precedential support in this state.[5] This

---

[5] The proper issue in Landlord-Tenant Court is right to possession and the few Michigan cases on point support the position that validity of foreclosure is to be considered. In *Gage v Sanborn,* 106 Mich 269, 279; 64 NW 32 (1895), this Court held:

"The questions to be tried before the commissioner under this statute [for summary proceedings] in a foreclosure case are: (1) The fact of the mortgage sale and *its validity;* (2) the holding over after expiration of the period of redemption. If these questions cannot be tried by the commissioner the statute is farcical, as jurisdiction would always be lost as soon as a plausible claim of invalidity of the sale should be raised. Hence a mortgagor is permitted to question the validity of the sale in this proceeding * * * ." (Emphasis added.)

The language of the statute in *Gage* is very similar to RJA

is the precise issue these defendants sought to raise in the form of an affirmative defense to plaintiff's claim for possession. However, the Landlord-Tenant Court held that the invalidity of foreclosure could not be raised as a defense in summary proceedings for possession under MCL 600.5714; MSA 27A.5714,[6] the statute under which this action was brought, and a summary judgment was granted plaintiff. Defendants sought appeal to the circuit court and sought a stay pending appeal to avoid eviction during the appellate process.[7] Under these circumstances, plaintiff-appellee rightfully requested an appeal bond. However, appellants allege as the basis of this appeal that the bonds subsequently set by the Landlord-Tenant Court were prohibitive considering appellants' financial circumstances, were excessive and unreasonable under the court rule and precluded their

---

§ 5714(1)(e) quoted in part in footnote 6, *infra*. See also *Reid v Rylander*, 270 Mich 263, 267; 258 NW 630 (1935) ("We again hold that validity of the [foreclosure] sale may be tested in a summary proceeding based thereon, insofar as invalidity thereof appears in the procedure * * * "). See, *e.g., Guardian Depositors Corp v Keller,* 286 Mich 403, 409; 282 NW 194 (1938).

This is not to say that noncompliance with HUD rules would necessarily be a sufficient basis for a finding of invalid foreclosure in this state. This issue has not yet received appellate review in Michigan.

[6] The statute reads in part relevant to these proceedings:

"(1) The person entitled to any premises may recover possession thereof by summary proceedings in the following cases:

* * *

"(e) *When a person continues in possession of any premises sold by virtue of any mortgage or execution, after the time limited by law for redemption of the premises.*"

Although there is no specific mention of affirmative defense within this statute, appellants assert part (e) should properly be read as follows:

"(e) When a person continues in possession of any premises [validly] sold by virtue of any mortgage or execution * * * ".

[7] Appeal is useless to these defendants without a stay because all incentive to appeal would be gone if they were forced to vacate their homes.

appeal of a jurisprudentially significant issue. We agree under the facts of this case.

### IV. APPEAL BOND MONEY REQUIREMENTS UNREASONABLE

The right to appeal is not required under common-law principles or general notions of due process. It is generally legislatively granted and can be conditioned on any reasonable bases. See Note, *The Right to Appeal,* 44 J Urban L 505-506 (1967). One of the conditions normally imposed is that of an appeal bond to protect the appellee during the pendency of the appeal. Note, *supra,* p 509 citing *Hanaw v Bailey,* 83 Mich 24; 46 NW 1039 (1890). However, to avoid the harsh effect the bond requirement can have on the poor, the majority of states have enacted statutes which permit waiver of the bond requirement in the case of indigency. Note, *supra,* p 510; see GCR 1963, 701.8 and GCR 1963, 120.

While in the instant case there is no contention that the bond requirement should be fully waived, appellants specifically assert that the appeal bonds, under the facts of this case, were not "reasonably conditioned" as required by the court rule because they contained penalties and were set at amounts so as to include sums which became due prior to the appeal.

Appeals from the Landlord-Tenant Court in summary proceedings for possession are governed by MCL 600.5753; MSA 27A.5753:

"Any party aggrieved by the determination or judgment of the court under this chapter may appeal to the circuit court of the same county. The appeal shall be made in the same manner as an appeal in *other civil*

*actions* from the same court, *with bond and procedure as provided by court rules.*" (Emphasis added.)

"[O]ther civil actions" (and therefore this action) are governed by CPR 46.11(c), which reads,

"An appeal shall not stay the issuance of a Writ of Restitution and proceedings pursuant thereto. If a stay of proceedings is desired, a bond shall be filed with the Claim of Appeal. Said bond shall contain a penalty to be fixed by the judge who rendered the decision. If the trial judge has not determined a bond and is not serving at the time of the appeal, another judge of the Landlord-Tenant Division shall determine the reasonable bond. *If the appellant is unable to obtain sureties or a cash deposit in lieu thereof, he may have the bond without sureties or cash deposit upon such reasonable conditions as the court may determine.* The bond shall be conditioned that the defendant will forthwith pay all rent due or to become due the plaintiff for the premises described in the complaint, or the rental value thereof together with costs, if the plaintiff prevails." (Emphasis added.)

In the instant case, appellants filed affidavits stating that they were unable to obtain sureties or make a cash deposit in lieu thereof.[8] These affidavits were accepted by the Landlord-Tenant Court, and the bonds were set without sureties which, under the above court rule, requires bond upon "reasonable conditions". As stated *supra,* the bond set by the court in each case was as follows: appellant Wingate was to pay 108% of the

---

[8] During oral arguments in the instant case, defendants' attorney was questioned about why bonds were not available to these women, both of whom were employed at the time. The attorney stated that in his experience, "[s]urety companies will not insure bonds for people coming out of summary proceedings on appeal". He explained that generally the defendants represented by the Landlord-Tenant Clinic, of which he is director, have no assets and that these defendants do not even own automobiles.

monthly mortgage payment of $232.00 or $250.56 for each month since the end of the redemption period ($2,255.04 through July of 1977), and appellant Brown was to pay 110% of the monthly mortgage payment of $194 or $213.40 for each month since the end of her redemption period ($1,067 through July, 1977). Each was given five days to pay these sums into the court.

There is nothing in the Common Pleas Court Rules which defines "reasonable conditions" but CPR 39 directs that:

> "In all matters not herein provided for, or not expressly prohibited or specified by statute, the Michigan Court Rules shall govern."

However, the General Court Rules also fail to specify what "reasonable conditions" shall be. Instead, GCR 1963, 754.9 requires the application of the District Court Rules.

> "In proceedings under RJA Chapter 57, *the procedure in* the district, municipal, and *common pleas courts shall be governed by District Court Rule 754* together with the applicable statutory practice provisions and applicable local court rules. Appeals to the circuit courts shall be governed by Rule 705."

General Court Rule 705.9(a) did not define "reasonable conditions" but District Court Rule 754.10(3) does:

> "Bond on Appeal. If the plaintiff appeals, the bond shall be conditioned that, if defendant prevails, plaintiff will pay the costs of the action. If the defendant appeals, the bond shall be conditioned that, if plaintiff prevails, defendant will pay the costs of the action and, if the suit is for possession for nonpayment of a sum of money, that the defendant will pay the rental or con-

tract amount found due. When it shall appear by affidavit that appellant is unable to obtain sureties or make a cash deposit in lieu thereof, appellant may have the bond without sureties or cash deposit upon such reasonable conditions as may be determined by the court. If a judgment for possession has been entered for plaintiff, the *reasonable condition for a defendant-appellant shall be that he shall pay into the trial court within five days of the date rent or payments are due under the lease or contract, a sum equal to the reasonable rental value of the premises, as determined by the court, as it becomes due after the time the appeal is filed and during the pendency of the appeal."* (Emphasis added.)

This definition of "reasonable conditions" makes clear that a bond set on *"reasonable conditions"*, as required in the case of defendants who cannot obtain surety, *can only include amounts due after the time of appeal.*

This limitation in the court rule is supported by case law which holds that the scope of an appeal bond must logically relate to its purpose or the right which the bond is meant to protect. This Court set forth the correct law in *Kennedy v Nims,* 52 Mich 153, 156; 17 NW 735 (1883):

*"The object of the bond is to save all the rights of the appellee,*. without prejudice or diminution *during the pendency of the appeal,* and at the same time to prevent frivolous, vexatious and unnecessary appeals. It is not intended as an additional security for the original indebtedness of the delinquent party, but *as an indemnity to the appellee against further trouble, expense and costs while the case is undergoing a review* in this Court to ascertain whether or not error has been committed or injustice done the appellant by the decree of the court below. I do not think that under the findings in this case the surety in the appeal bond is liable for any portion of the deficit in the mortgage indebtedness." (Emphasis added.)

While in *Kennedy* the question being considered was not precisely that which we consider in the instant case,[9] this does not alter the validity of this Court's clear statement regarding the scope of protection of an appeal bond. We found the object to be the saving of "all the rights of the appellee * * * during the pendency of the appeal * * * as an indemnity * * * against *further trouble*".

In the instant case the only further trouble which might accrue to the appellee during the pendency of this appeal is the loss of payments which would become due during that period. By setting bonds upon reasonable conditions to prevent this loss, the lower court could have complied with both the spirit and letter of the law. To go further and require payments which became due *before* an appeal was sought is not within the proper objective of such a bond. *Kennedy, supra.* See also 4A CJS, Appeal and Error, § 500, p 203.

## V. APPELLEE'S CONTENTIONS

Appellees, however, cite this Court to former GCR 1963, 701.7(3), in force when this action was instituted, and its amended version, GCR 1963, 701.8(a)(2), effective July 25, 1977, as authority for the inclusion of the past due amount within the appeal bond. The former rule provides in relevant part:

"Bond on Appeal; Stay of Proceedings. Unless exempted by law, the appellant shall file a bond with his claim of appeal, cross appeal, or order allowing appeal. The bond on appeal

"(1) shall be in a penalty not less than $200 and except for appeals from probate court, if the appeal is

---

[9] The issue in *Kennedy* was whether the sureties on an appeal bond were liable for anything beyond the costs of the appeal.

by a person against whom a claim has been asserted, it shall be not less than one and one-quarter the amount of the judgment or claim allowed. * * * *In judgments for possession of land, the bond shall be in the amount and on the conditions provided for by statute.*

\* \* \*

"(3) *shall contain a condition that* the appellant will prosecute his appeal with all due diligence, to a decision in the circuit court, and that if a judgment is rendered against him in such court, he will pay the amount of such judgment, including all costs, with interest thereon, and if his appeal is discontinued or dismissed that he will pay the amount of the judgment rendered against him, if any, in the lower court including all costs, with interest thereon and *in cases involving the possession of land, he will pay damages from the time of the forcible entry, or detainer, or the notice to quit, or demand for possession as the case may be, and do any other act which shall be expressly named in the statute authorizing appeal as a condition of the appeal bond;* * * * ." (Emphasis added.)

It is apparent that this court rule treats "amount" and "conditions" as separate. Specifically, in relation to "judgments for possession of land", the rule states "the bond shall be *in the amount* and *on the conditions* provided for by statute". The "amount" of the bond is fully covered in subrule (1), *supra.* The *"conditions" are fully covered in subrule (3). While in the instant case only the "amount" of the bond is at issue, plaintiff-appellee asserts that one of the "conditions" authorizes setting the bond at a greater "amount". We do not see the logic of this assertion.*

In subrule (3), *supra,* the "conditions" under which the bond is to be given are by their very language meant to be promises or assurances to be made by appellant in conjunction with a bond to stay proceedings. The first requirement is that

"appellant will prosecute his appeal with all due diligence * * * " and the second is that "if a judgment is rendered against him * * * he will pay the amount of such judgment". Just as these cannot possibly be interpreted to impact the "amount" of the bond under subrule (1), the payment of which must be secured prior to stay, so the third condition that "in cases involving the possession of land, he will pay damages from the time of * * * demand for possession", cannot be so interpreted. Indeed, the only logical interpretation is that all three are to be "promised" prior to the granting of a stay.[10] Further, although the amended rule was not effective at the time the instant appeal bond was set, we note it retains the same distinctions.[11]

---

[10] Because appellants were apparently not asked to comply with the "conditions" aspect of the court rule, the propriety of requiring, as a prerequisite to appeal bond, a promise that appellants will pay a prior sum of money which was not requested in plaintiff's suit (this suit under MCL 600.5714[1][e]; MSA 27A.5714[1][e], is solely for possession) and for which there is, therefore, no judgment against appellants, is not before this Court. We again note the limitations set forth in *Kennedy* that the appeal bond is "an indemnity * * * against *further trouble*". (Emphasis added.)

[11] The amended court rule, GCR 1963, 701.8, effective July 25, 1977, states:

"Stay of Proceedings

"(a) Civil Cases.

* * *

"(2) Unless a bond is waived under GCR 1963, 120 or the appellant is exempted by law from filing a bond, the appellant shall file a bond with the claim of appeal, claim of cross appeal, or order granting leave to appeal. The appeal bond must:

"(A) be at least $200, and

"(i) except for an appeal from probate court, if the appeal is by a person against whom a money judgment has been entered, it must be not less than one and one-quarter times the amount of the judgment; or

"(ii) *if the appeal is from a judgment for possession of land, it must be in the amount and on the conditions provided by rule;*

"(B) recite the judgment so as to exhibit the names of the parties and the judge, the character in which the parties prosecuted or defended before the trial court, and the amount recovered;

"(C) *contain a condition that*

Therefore, we find no authority in these rules for extending the appeal bond in the instant case beyond the limitations of its purpose, see *Kennedy, supra,* and beyond an amount required as a "reasonable condition". See CPR 46.11(c) and DCR 754.10(3).

## VI. Penalties

Finally, appellants challenge the addition of a penalty in a case such as this where sureties cannot be obtained. The penalty provision under CPR 46.11(c) is additional protection against frivolous appeal and this is within the valid purpose of an appeal bond under *Kennedy, supra.* The court rule states that a bond "*shall* contain a penalty" (emphasis added). The same rule subsequently states that if "the appellant is unable to obtain sureties * * * he may have the bond * * * upon such reasonable conditions as the court may determine". The use of the word "shall" in regard to the penalty provision leaves no option other than to find a penalty mandatory. However, the subsequent "reasonable condition" requirement must also be given effect.

"(i) the appellant will diligently prosecute his appeal to a decision, and if a judgment is rendered against him, he will pay the amount of the judgment, including costs and interest;

"(ii) if his appeal is discontinued or dismissed, he will pay the amount of the judgment, if any, rendered against him in the trial court, including costs and interest;

"(iii) *in a case involving the possession of land, he will pay damages from the time of forcible entry, the detainer, the notice to quit, or the demand for possession;* and

"(iv) he will perform any other act expressly named in the statute authorizing appeal; and

"(D) be executed by the appellant with one or more sufficient sureties as required by GCR 1963, 763." (Emphasis added.)

As is apparent, (A), *supra,* is the portion dealing with the "amount" of the bond. Part (C), *supra,* deals with conditions or promises and can only logically be interpreted in the same manner as its precedessor.

Therefore, when the appellant is unable to obtain a surety and the bond must thereby be set on "reasonable conditions", the "penalty" provision must be examined within the context of reasonability. This involves an analysis of how much of a penalty is reasonable in light of appellants' financial circumstances.

Because of the availability of a complete record in the instant case, we note the following evidence of relevance to this determination. The appellants' financial circumstances are such that bonds set too far beyond a requirement equal to the monthly mortgage payment as it becomes due during the pendency of the appeal would literally preclude exercise of the right to appeal in the instant case. From appellant Wingate's affidavit that she was unable to obtain surety or make cash deposit, it was evident that she had three children, a take-home pay of $169.67 per week, child support totaling $37 per week, personal savings and belongings totaling approximately $125, medical debts of approximately $2,000 and a family who was unable to assist her financially.

Appellant Brown's affidavit evidenced that she had two children, a take-home pay of $220 per week, had no debts but also had no additional sources of income such as child support, had personal belongings and savings totaling less than $100 and a family who was unable to assist her financially.

This analysis does not disclose to us any reason for the amount of the penalty and the court, in assessing it, gave none. Therefore, on remand, when the trial court determines the proper penalty to be assessed, the reasons for doing so should be given so if there is further appeal, a proper decision can be made in light of the whole record.

## VII. CONCLUSION

We do not question the need to protect the rights of an appellee in the case of a stay pending appeal. Appellee's rights and interests are considerable and are recognized in both the court rules and case law of this jurisdiction. At the same time, there is no authority for going further and hindering the right to stay pending appeal by forcing appellant to give more than is required to protect appellee's rights.

Reverse and remand for entry of an appeal bond consistent with the findings in this opinion.

KAVANAGH, C.J., and LEVIN, COLEMAN, and BLAIR MOODY, JR., JJ., concurred with WILLIAMS, J.

FITZGERALD, J. *(dissenting)*. These cases, which were consolidated for purposes of appeal to Wayne Circuit Court, involve the foreclosure of two mortgages subsidized and insured by the Department of Housing and Urban Development. Summary proceedings for possession of premises were commenced by plaintiff against both defendants in the Landlord-Tenant Division of the Common Pleas Court of Detroit at separate dates, and in each case plaintiff was granted its motion for summary judgment. Defendants both filed a claim of appeal in Common Pleas Court. Defendants also moved to have the bond on appeal set in order to stay the execution of writs of restitution. The issue before this Court has been limited to the question of whether the appeal bond, as set in each case by the Common Pleas Court and affirmed by the circuit court, was "reasonable" within the meaning of the applicable court rules. We affirm the bonds as set.

I. FACTS

On February 28, 1974, defendant Carolyn Wingate entered into a mortgage agreement with Century Mortgage Corporation (Century). The mortgage was subsidized and insured by the Department of Housing and Urban Development (HUD) pursuant to the national housing act, 12 USC 1715z *et seq.* After the mortgage was recorded, it was assigned to Continental Acceptance Corporation (Continental) on February 28, 1974, and thereafter assigned to plaintiff Federal National Mortgage Association (FNMA) on March 28, 1974. Pursuant to its agreement with plaintiff, Continental acted as the servicing agent for the mortgage.

Defendant Wingate made her first payment on the mortgage on April 5, 1974, and remained current until September 4, 1974, when she was notified by Continental that her September mortgage check had been returned by the bank for insufficient funds. Mrs. Wingate remained between two and four months in default until April 1975, when she again became current. However, Mrs. Wingate made only two more payments on the mortgage, one in July 1975 and another in October 1975. During this period Continental made numerous attempts to contact Mrs. Wingate regarding the arrearage in mortgage payments. The parties eventually entered into a forbearance agreement, but Mrs. Wingate failed to follow the liquidation plan in the agreement which would have brought her up to date in her mortgage payments.

On April 1, 1976, at which time she was more than nine months in default in her mortgage payments, Mrs. Wingate was sent a certified letter advising her of the commencement of foreclosure proceedings. On April 29, 1976, a public foreclo-

sure sale by advertisement was held, and plaintiff, being the highest bidder, received a sheriff's deed. Mrs. Wingate was sent a 30-day notice to quit on September 29, 1976, and shortly thereafter she applied to HUD for an acceptance of assignment of a mortgage in default. On January 5, 1977, having received notification that Mrs. Wingate's application for acceptance of assignment had been rejected, plaintiff commenced summary proceedings for possession of premises. On April 21, 1977, the Common Pleas Court granted plaintiff's motion for summary judgment.

Defendant Mary Brown entered into a mortgage agreement with Century on November 30, 1973. This mortgage was also insured and subsidized by HUD and, like the Wingate mortgage, the Brown mortgage was recorded and assigned to Continental and thereafter assigned to plaintiff FNMA, with Continental acting as servicing agent.

Defendant Brown made her first mortgage payment on January 24, 1974. During the next two years she was in default on her mortgage payments not less than five times. In February 1976, defendant Brown made her last payment, which brought her up to date through October 1975. Mrs. Brown and Continental entered a forbearance agreement on March 15, 1976, but no further mortgage payments were made.

On June 17, 1976, a certified letter was sent to defendant Brown advising her of the commencement of foreclosure proceedings. A public foreclosure sale by advertisement was held on September 2, 1976, and plaintiff, being the highest bidder, received a sheriff's deed. On February 1, 1977, defendant Brown was sent a 30-day notice to quit by certified mail. Summary proceedings for possession of premises were commenced on March 15,

1977. The Common Pleas Court granted plaintiff's motion for summary judgment on April 29, 1977.

Both defendants Wingate and Brown filed claims of appeal, at which time their cases were consolidated. Defendants then moved to set the appeal bond in order to stay the issuance of writs of restitution and filed affidavits that they were unable to obtain sureties or make a cash deposit in lieu thereof. On June 27, 1977, the Common Pleas Court set bond on appeal. Defendant Wingate was ordered to pay 108% of the monthly mortgage payment of $232 for each month since the expiration of the redemption period (October 29, 1976) to be paid as follows: $2,255.04 to be paid by July 5, 1977 (the payments for November 1976 through July 1977 at $250.56 per month), plus $250.56 to be paid by the first day of each subsequent month. Defendant Brown was ordered to pay 110% of the monthly mortgage payment of $194 for each month since the expiration of the redemption period (March 2, 1977) to be paid as follows: $1,067 to be paid by July 5, 1977 (the payments for March 1977 through July 1977 at $213.40 per month), plus $213.40 to be paid by the first day of each subsequent month.

On July 1, 1977, defendants filed a motion in circuit court to amend the order of the Common Pleas Court setting bond on appeal, on the basis that the appeal bond was set in violation of the court rules and was excessive. On July 22, the circuit court denied defendants' motion to amend the order setting bond on appeal. On August 1, 1977, the Court of Appeals denied defendants' application for leave to appeal the circuit court order of July 22, 1977. This Court granted defendants' application for leave to appeal and defendants' motion for stay of proceedings on October 25,

1977. 401 Mich 830 (1977). On January 19, 1978, this Court granted plaintiff's motion for clarification of the order granting leave to appeal and limited the issue on appeal to the question of the reasonableness of the appeal bond. 402 Mich 854 (1978).

## II. Issue

Defendants argue that the appeal bond set by the Common Pleas Court in each case was excessive and in clear violation of applicable court rules.

Appeals from Common Pleas Court in summary proceedings for possession of premises are governed by MCL 600.5753; MSA 27A.5753, which provides:

"Any party aggrieved by the determination or judgment of the court under this chapter may appeal to the circuit court of the same county. The appeal shall be made in the same manner as an appeal in other civil actions from the same court, with bond and procedure as provided by court rules."

The applicable court rule to summary proceedings in Common Pleas Court is CPR 46. CPR 46.11(c) pertains to the filing of an appeal bond to stay the issuance of a writ of restitution:

"An appeal shall not stay the issuance of a Writ of Restitution and proceedings pursuant thereto. If a stay of proceedings is desired, a bond shall be filed with the Claim of Appeal. Said bond shall contain a penalty to be fixed by the judge who rendered the decision. If the trial judge has not determined a bond and is not serving at the time of the appeal, another judge of the Landlord-Tenant Division shall determine the reasonable bond. If the appellant is unable to obtain sureties or

make a cash deposit in lieu thereof, he may have the bond without sureties or cash deposit upon such reasonable conditions as the court may determine. The bond shall be conditioned that the defendant will forthwith pay all rent due or to become due the plaintiff for the premises described in the complaint, or the rental value thereof together with costs, if the plaintiff prevails."

Defendants contend that the sentence in CPR 46.11(c) in regard to penalties cannot apply to appeal bonds without sureties because such bonds must be set upon "reasonable conditions" and it would be patently unreasonable for such a bond to contain a penalty. Hence, argue defendants, the trial court was in violation of CPR 46.11(c) in fixing a penalty of 8% in the Wingate case and fixing a penalty of 10% in the Brown case.

Defendants cite no authority to support this interpretation of CPR 46.11(c), nor do we find support for such an interpretation in the language of the rule itself. The sentence in CPR 46.11(c) in regard to penalties speaks of bonds in general and makes no reference as to whether such bonds are with or without sureties or a cash deposit. Indeed, the court rule clearly leaves it to the trial court's discretion to determine the "reasonable conditions" upon which an appeal bond without sureties or cash deposit may be set.

Defendants also assert that the trial court violated CPR 46.11(c) by requiring defendants to make back payments back to the date of the expiration of the redemption period when plaintiff had the right to possession of premises. Defendants argue that the trial court should have set the appeal bonds at the amount of the monthly mortgage payments for each month, beginning May 2, 1977, when each defendant filed claim of appeal. Defendants rely on *Kennedy v Nims,* 52 Mich 153;

17 NW 735 (1883), for the proposition that the purpose of an appeal bond is to protect the appellee only against those losses which might accrue during the pendency of appeal. In *Kennedy*, this Court said:

"The object of the bond is to save all the rights of the appellee, without prejudice or diminution during the pendency of the appeal, and at the same time to prevent frivolous, vexatious and unnecessary appeals. It is not intended as an additional security for the original indebtedness of the delinquent party, but as an indemnity to the appellee against further trouble, expense and costs while the case is undergoing a review in this Court to ascertain whether or not error has been committed or injustice done the appellant by the decree of the court below. I do not think that under the findings in this case the surety in the appeal bond is liable for any portion of the deficit in the mortgage indebtedness." 52 Mich 153, 156.

While the purpose of an appeal bond was well stated by the *Kennedy* Court, we find that the facts in that case are clearly distinguishable from those in the instant case. In *Kennedy*, plaintiff, upon prevailing on appeal from a decree in a foreclosure suit, sought to satisfy the deficiency of the mortgage sale by bringing an action on the appeal bond. This Court held that the sureties were liable only for the costs on appeal and not to make up the deficiency of the mortgage sale. In the instant case, the only issue was whether plaintiff had the right to possession of premises at the expiration of the redemption period.

Defendants misinterpret *Kennedy* when they argue that that case requires only the protection of those rights which might accrue during the pendency of the appeal. The *Kennedy* case speaks of saving "all the rights of the appellee" whenever

those rights were acquired. In the instant case, plaintiff acquired the right of possession of premises, or the fair rental value thereof, at the expiration of the redemption period. Hence, the Common Pleas Court fixed the appeal bond in each case at the amount of the monthly mortgage payments for each month beginning at the end of redemption period.

Further support for the propriety of setting defendants' appeal bonds to include back payments to the expiration of the redemption period may be found in GCR 1963, 701, which pertains to appeals to circuit court. Former GCR 1963, 701.7(3) provided in pertinent part as follows:

"Unless exempted by law, the appellant shall file a bond with his claim of appeal, cross appeal, or order allowing appeal. The bond on appeal

* * *

(3) shall contain a condition that the appellant will prosecute his appeal with all due diligence, to a decision in the circuit court, and that if a judgment is rendered against him in such court, he will pay the amount of such judgment, including all costs, with interest thereon, and if his appeal is discontinued or dismissed that he will pay the amount of the judgment rendered against him, if any, in the lower court including all costs, with interest thereon and *in cases involving the possession of land, he will pay damages from the time of the forcible entry, or detainer, or the notice to quit, or demand for possession as the case may be,* and do any other act which shall be expressly named in the statute authorizing appeal as a condition of the appeal bond;". (emphasis added).

GCR 1963, 701 has been amended, and, effective July 25, 1977, 701.7(3) was replaced by 701.8(a)(2) which provides in pertinent part as follows:

"Unless a bond is waived under GCR 1963, 120 or the appellant is exempted by law from filing a bond, the appellant shall file a bond with the claim of appeal, claim of cross appeal, or order granting leave to appeal. The appeal bond must:

\* \* \*

"(C) contain a condition that

\* \* \*

"(iii) in a case involving the possession of land, he will pay damages from the time of forcible entry, the detainer, the notice to quit, or the demand for possession \* \* \* ."

Defendants also maintain that "reasonable conditions" are not adequately defined by CPR 46.11(c) and urge this Court to consult DCR 754 pertaining to summary proceedings to recover possession of premises. Appeal bonds in summary proceedings are governed by DCR 754.10(3), which provides in pertinent part as follows:

"When it shall appear by affidavit that appellant is unable to obtain sureties or make a cash deposit in lieu thereof, appellant may have the bond without sureties or cash deposit upon such reasonable conditions as may be determined by the court. If a judgment for possession has been entered for plaintiff, the reasonable condition for a defendant-appellant shall be that he shall pay into the trial court within five days of the date rent or payments are due under the lease or contract, a sum equal to the reasonable rental value of the premises, as determined by the court, as it becomes due after the time the appeal is filed and during the pendency of the appeal."

Defendants rely on the last sentence of DCR 754.10(3) as authority for their argument that their appeal bonds should have only included payments "due after the time the appeal is filed". We find defendants' argument with regard to the ap-

plicability of DCR 754.10(3) unpersuasive. Each court is obligated to follow its own court rules, and the procedure in Common Pleas Court for fixing bond in summary proceedings for possession of premises is governed by CPR 46.11(c).

Since we find that the appeal bonds were set in accordance with the applicable court rules, we are faced with the question of whether or not the trial court abused its discretion in setting defendants' appeal bonds. Appellate review of a trial court's exercise of judicial discretion has been narrowly limited by this Court. In *Spalding v Spalding,* 355 Mich 382; 94 NW2d 810 (1959), we said:

"The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." 355 Mich 382, 384-385.

In the instant case, there were a number of factors to be taken into account by the trial court in setting the appeal bond. According to the affidavits filed in the Common Pleas Court, defendant Wingate had an after-tax income of $8,822.84 per year and received $1,924 in child support per year. Defendant Brown had an after-tax income of $11,-440 per year. At the time the trial court fixed the appeal bonds, defendant Wingate had not made a mortgage payment in more than 21 months and defendant Brown had not made a mortgage payment in more than 17 months. Further, one of the primary objects of an appeal bond is to prevent frivolous appeals. We cannot believe that that end

would be well served by merely requiring defendants to resume making their monthly mortgage payments as of the date they filed claim of appeal, after having lived rent-free for 21 and 17 months respectively.

Based on the standard set forth in *Spalding,* we perceive no abuse of discretion by the trial court in setting defendants' appeal bond.

Affirmed.

Ryan, J., concurred with Fitzgerald, J.