Louis B. Heller, J.
In this mortgage foreclosure action, plaintiff moves for an order dismissing the amended answer and defenses of defendants Eugene R. Ricks and Annabell Ricks (hereinafter denoted as Ricks), referring the case to a referee and amending the title of the action.
The defendants Ricks’ answer admits the execution of the bond and mortgage, the terms thereof and the defaults thereunder. Defendants also have pleaded four affirmative defenses.
The first and second defenses state that the mortgage sought to be foreclosed herein is insured by the Federal Housing Administration (FHA) of the United States Department of Housing and Urban Development (HUD), and that the rights of the mortgagee and mortgagor are subject to certain regulations promulgated by the Secretary of HUD, including the procedural guidelines set forth in the HUD Handbook F.H.A. G 4191.1, dated April 18, 1974 and entitled "Administration of Insured Home Mortgages.” It is the defendants’ claim that the plaintiff mortgagee failed to comply with certain of these "condition precedent” guidelines prior to commencing this foreclosure action.
Defendants Ricks’ third and fourth defenses assert that the mortgage is also a Veterans Administration mortgage, subjecting the mortgagee to the servicing provisions of the Veterans Administration Lenders Handbook, Pamphlet 26-7. It is Ricks’ contention that, as with the HUD Handbook, the Lender’s Handbook imposes binding conditions precedent upon the mortgagee before it can foreclose a mortgage and the plaintiff mortgagee has failed to comply with these conditions.
The plaintiff argues against these four defenses on both the law and on the facts. As regards the law, it contends that there are no cases in this State which permit a defendant to *817 plead as a defense in a foreclosure action Federal administration guidelines in the servicing of Federally-guaranteed mortgage loans. On the facts, the plaintiff claims that, in any event, it has complied with all the requirements as set forth in the two Handbooks before it resorted to foreclosure.
The primary issue of law presented in this case and raised by the instant motion is, of what legal significance are the provisions of the HUD and Veterans Administration Handbooks, viz., are they binding conditions precedent which must be complied with before a mortgagee may institute foreclosure proceedings? And, more specifically in this case, can the defendant mortgagors interpose as a valid defense the plaintiff mortgagee’s noncompliance with these provisions?
Because of the great importance of this issue, not only to the defendants, but to all mortgagors holding government-insured mortgages, the court will consider the question as it relates to each of the defenses separately. The court also takes cognizance that this is a case of first impression in this jurisdiction. The opposing attorneys, in their memorandums of law, have made reference to only three cases elsewhere which have deliberated on the issue herein and this court has been unable to locate any other reported decisions. The three cited cases, which the court will be discussing hereafter, include two opinions by Federal District Court Judge Hubert Will in Brown v Lynn, the first one issued on October 11, 1974 and found in 385 F Supp 986, and the second one issued February 12, 1975 upon a motion to reconsider the earlier opinion and found in 392 F Supp 559. The third case is an opinion by the Illinois Circuit Court, Federal Nat. Mtge. Assn. (F.N.M.A.) v Huffman, (No. 73 CH-7453, April 17, 1975).
Turning now to Ricks’ first defense, the mortgage is insured pursuant to section 203 of the National Housing Act (US Code, tit 12, § 1709). The housing program was instituted in furtherance of the congressional mandate to realize as soon as feasible the goal of a decent home and a suitable living environment for every American family (US Code, tit 42 § 1441). Section 203 was originally passed in 1934 and subsequently amended many times in response to a perceived housing shortage for low income families (Brown v Lynn, 385 F Supp 986, 989). The program is designed to make homes more accessible to low income families by means of extensive mortgage insurance which will permit mortgagees to accept limited down payments (US Code, tit 12, § 1709 subd [b], par *818 [9]), reduced interest rates (US Code, tit 12, § 1709, subd [b], par [5]), and longer maturities (US Code, tit 12, § 1709, subd [b], par [3]) than are available in the market (Brown v Lynn, supra). Many American families would not otherwise be able to afford the rates and terms which must be demanded by a mortgagee whose loan is not insured by the government.
Mortgagees are induced to enter into these essentially risk-free mortgage contracts by being guaranteed that they will suffer no loss in the event of default. However, only mortgagees who have been approved by HUD may hold mortgages in this program (US Code, tit 12, § 1709, subd [b], par [1]) and under this same section, mortgagees have to be "able to service the mortgage properly.” This requirement of servicing is also contained in the HUD regulations (24 CFR 203.9).
The nature of the servicing is detailed in the HUD Handbook (supra). Chapter 1, paragraph 1, of the Handbook states in part:
"The purpose of this Handbook is to provide procedural information and policy guidelines for use by HUD approved mortgagees in servicing HUD insured home mortgages. It is to be noted that the Handbook sets forth in considerable detail procedural standards to be observed by those servicing HUD insured mortgages”.
Amongst the objectives sought to be achieved by the HUD servicing policies is expressed in paragraph 2 as:
"b. To protect HUD’s interest in the insured mortgage. Basically, this is defined as minimizing the probability of an insured mortgage terminating in a default acquisition and minimizing loss to HUD where a default acquisition cannot be avoided.”
Several subsequent chapters of the Handbook are devoted to mortgagors in default. Chapter 7, entitled "Delinquencies and Defaults — Mortgage Collection Activities”, sets forth in paragraph 101:
"COLLECTION ACTIVITIES. The basic objectives to be attained in the collection of delinquent and defaulted mortgage payments are to collect amounts due from the mortgagor in a timely manner, to avoid foreclosure, and to minimize loss on unavoidable foreclosure. To assist in the evaluation of a lenders collection efforts, a number of methods for a well-rounded servicing program for delinquent mortgages are suggested in the following paragraphs.”
*819 Paragraph 103, — Causes of Default — provides that:
"The servicer, in communicating with the borrower, should make every effort to determine the root cause of default and should work with the borrower, the HUD-approved counseling agency and the HUD office in correcting the default”.
Paragraph 110 — Review Prior to Beginning Foreclosure Action — states in part:
"Foreclosure of a mortgage shall be undertaken only after the mortgagee or servicer has assured itself that the case has been handled in full accordance with the servicing practice outlined herein * * *
"a) The servicer shall have a system for management review of foreclosure or forbearance recommendations submitted by personnel directly in contact with the borrower. This review procedure should insure that collection policies set forth in this Handbook have been followed.”
Chapter 8 of the Handbook, entitled HUD-APPROVED RELIEF PROVISIONS, declares in paragraph 121:
"FORBEARANCE RELIEF. Mortgagees are expected to make a concerted effort to avoid the foreclosure or assignment of HUD-insured mortgages, and to utilize acceptable methods of forbearance relief wherever feasible. Forbearance is available in several forms where it is reasonable for the mortgagee to believe that the mortgagor can and will resume the mortgage payments. Any of the relief measures described in this chapter may be used and mortgagees are expected to refrain from foreclosures where it is determined that the case may be salvaged through the use of one or more of these procedures.”
Some of the relief measures described thereafter include voluntary withholding of foreclosure (par. 122a), forbearance, (par. 123) and recasting of the mortgage (par. 125).
It is defendants’ Ricks’ contention, as contained in paragraphs Fourth through Tenth of their first defense, that the aforequoted passages from the Handbook are conditions precedent to the foreclosure of the Ricks’ mortgage, which the plaintiff mortgagee has failed to comply with, in that:
1. Plaintiff refused to ascertain the reason for defendants Ricks’ default.
2. Plaintiff refused to accept partial payment.
3. Plaintiff refused to consider forbearance, recasting or voluntary withholding of foreclosure.
*820 It is abundantly clear from a reading of the afore-mentioned provisions that the HUD Handbook places great emphasis on a mortgagee servicing a HUD-insured home mortgage in a manner that will avoid foreclosure. But in order to sustain the defendants Ricks’ first defense, it is necessary to find that the mortgagee is under an obligation to follow the procedures outlined.
Defendants claim in its first memorandum of law that the Handbook is an administrative regulation entitling it to the full force and effect of law. While it is true that rules and regulations promulgated by governmental agencies pursuant to statutory authority have the force and effect of laws (Farmer v Philadelphia Elec. Co., 329 F2d 3, 7) defendants have not referred to any cases holding that the HUD Handbook constitutes rules or regulations. Plaintiff, on the other hand, cites Brown v Lynn, (385 F Supp 986 supra) for the proposition that the Handbook does not contain legally binding regulations.
Brown v Lynn (supra), involved an action by individual mortgagors seeking monetary damages and declaratory and injunctive relief from defendant mortgagees who had already instituted foreclosure proceedings against them, and from HUD. The plaintiff mortgagors claimed, inter alia, that the defendants were guilty of violating Federal regulations by not pursuing prescribed alternatives before resorting to foreclosure and they point to the HUD Guidelines [the predecessor to the HUD Handbook] as a source of these regulations. Judge Will rejected this contention stating that:
"the HUD guidelines upon which the plaintiffs have particularly relied as a source for the 'regulatory’ scheme underlying these programs, have not been issued pursuant to the Administrative Procedure Act. As such, they only contain statements of policy and not regulations, per se, having the force and effect of law” (Brown v Lynn, 385 F Supp 986, 998, supra).
The Administrative Procedure Act (APA) requires both notice of proposed rules and regulations be published in the Federal Register (US Code, tit 5, § 553, subd [b]) and the actual rules themselves to be so published (US Code, tit 5, § 552, subd [a], par [1], cl [D]). Further, HUD’s own regulations provide that HUD "will, although not required to do so, voluntarily publish in the Federal register its [proposed] rules and regulations” (24 CFR 10.5). And section 10.4 mandates that "There shall be published in the Federal Register all *821 rules and regulations of the Department [HUD] hereafter issued”.
Since it is undisputed that the Handbook was not published in the Federal Register (Brown v Lynn, 392 F Supp 559, 562, supra) and therefore not promulgated according to the strict requirements of the Administrative Procedure Act (US Code, tit 5, § 553, subd [b]; § 552, subd [a], par [1], cl [D]), it cannot be accorded the dignity of a regulation having the force and effect of law (Thomas v County Office Committee of Cameron County, 327 F Supp 1244, 1253). While the Second Circuit has held that failure to file or publish in the Federal Register is without consequence as against a person having actual knowledge of a regulation (United States v Aarons, 310 F2d 341), there are two features of the case which distinguish it and render its holding inapplicable here:. 1) It involved a criminal violation of a statute relating to national defense and 2) the regulation in question was found by the Court to be a "rule” within the definition set forth in the Administrative Procedure Act (US Code, tit 5, § 551, subd [4]). No such finding can be made in the instant case that the Handbook represents a "rule” or "regulation.”
Moreover, the Handbook cannot constitute a valid rule or regulation in view of HUD’s failure to publish the Handbook in the Federal Register in accordance with HUD’s own regulations (24 CFR 10.5, 10.4; Brown v Lynn, 392 F Supp 559, 562, supra). Settled law holds administrative agencies to compliance with their own regulations (Borough of Lansdale, Pa. v Federal Power Comm., 494 F2d 1104, 1113).
Notwithstanding that the Handbook does not represent a validly enacted rule or regulation, are mortgagees otherwise obligated to comply with the guidelines contained therein?
Judge Will stated the following dicta in his second Brown v Lynn opinion, wherein he again rejected the plaintiffs claim that the Handbook was legally binding against the defendant mortgagees:
"The decision does not limit state or federal foreclosure courts from exercising their equity powers by refusing to grant foreclosures where mortgagees have flagrantly disregarded the forbearance provisions of the HUD Handbook. Nor should our opinions be construed as carte blanche for mortgagees to act with abandon to the limits of the elusive 'prudent lender’ standard. Our consideration of the enforceability of the HUD Handbook is limited solely to plaintiffs’ instant action *822 for monetary damages and injunctive relief for alleged violations of the non-binding guidelines. Since the Handbook does not impose legal obligations upon the mortgagees, we find no basis for such an action against them. Our opinion goes no further.
"That holding, however, does not preclude foreclosure courts from allowing mortgagors to raise non-compliance with the Handbook as a defense to a 'quick’ foreclosure. Somewhat analogous to the situation where HUD could suspend or terminate mortgagees for poor servicing practices, even though such conduct would not give rise to a lawsuit, so too, a court of equity may restrict a mortgagee who has not, within the reasonable expectations of good faith and fair dealing, followed or applied the guidelines.
"On the theory that the guidelines are sensible, equitable standards of conduct, consistent with, and issued in furtherance of, the national housing goals, foreclosure courts can, and in appropriate instances should, direct the parties to pursue and exhaust the alternatives to foreclosure enumerated in the Handbook. Merely rubber-stamping mortgagees’ foreclosure actions, when they have acted barely within the formal legal bounds of these loosely defined housing programs, will contribute further to the needless loss of homes and to the creation of virtual ghost areas within our inner cities. Foreclosure courts need not woodenly perpetuate the national tragedy surrounding quick foreclosures to which we referred in our earlier opinion, but, where appropriate, they should require adherence to the policies and procedures prescribed by the Handbook. Such an approach is not inconsistent with our rulings herein.” (Brown v Lynn, 392 F Supp 559, 562-563.)
Two months after Judge Will issued his second opinion in Brown v Lynn, (supra), F.N.M.A. v Huffman was decided in the Circuit Court of Cook County, Illinois Chancery Division (No. 73-CH-7453). This case involved the F.N.M.A., as assignee of the mortgagee, bringing a foreclosure action against the defendant mortgagor because of the defendant’s default in mortgage payments. The defendant interposed an affirmative defense almost identical to that raised in the instant case, viz., that the failure of the F.N.M.A. or the mortgagee to observe the rules and regulations in the HUD Guide relating to collection activities prior to a foreclosure and special forbearance relief constitutes a bar to foreclosure. After a trial of the action, the court held that plaintiff’s failure to follow the *823 alternatives to foreclosure as provided by the HUD Guide did constitute a bar to foreclosure and denied the plaintiffs prayer for foreclosure.
The court found that even though the Guide was not expressed "in mandatory terms, it was there to be used.” The court further found that "unless the guidelines obligated [the mortgagee] to make some attempt to offer alternatives to foreclosure when the situation so merited, these guidelines became meaningless and the performance of the housing program is thoroughly obfuscated.”
The court, pursuant to the dicta in Brown v Lynn (392 F Supp 559, supra) based its decision primarily upon principles of equity. A foreclosure action is equitable in nature (Bieber v Goldberg, 133 App Div 207, 210), and it is a cardinal principle of equity jurisprudence that he who seeks equity must do equity (20 NY Jur, Equity, § 104). A plaintiff is equitably bound to do equity as a condition precedent to obtaining equitable relief (Duggan v Platz, 263 NY 505, 507).
Applying this maxim to the mortgage foreclosure area, any conduct on the part of the plaintiff mortgagee which is considered unconscionable or oppressive will operate to deny it the aid of a court of equity (Graf v Hope Bldg Corp., 254 NY 1, 4). Courts do not favor oppressive acts on the part of mortgagees, even though claimed to be founded on strict legal rights (Harry Kresner, Inc., v Fuchs, 238 App Div 844).
What constitutes an unconscionable advantage depends upon the circumstances (Graf v Hope Building Corp., supra, p. 12, Cardozo, J., dissenting). An examination of the circumstances surrounding the instant mortgage reveals that it was granted by the initial mortgagee, United States Life Insurance Co., pursuant to the insured mortgage guarantee program of the National Housing Act (US Code, tit 12, § 1709). The objective of this program, as noted earlier, is to carry out the congressional mandate of providing a decent home for low income families by making available to them mortgages which they could not otherwise afford.
To implement this goal, the program encourages mortgagees to offer favorable mortgages so that these families can buy a house. But the implementation cannot begin and end with the acquisition of the house and mortgage by the owner mortgagor. Retention of the house must be viewed with equal importance or else of what value is the program if the mortgagor can lose his house, through a mortgage foreclosure, as quickly *824 as it was obtained? To quote from F.N.M.A. v Huffman (supra):
“Thus we find HUD and its servicing mortgagees engaged in a tragic charade with the mortgagors. HUD helps to obtain a mortgage for one who would not otherwise qualify and promises that person a chance to share in the American dream of a decent home for his family, but at the first sign of any problem, HUD abandons that mortgagor who by definition does not have either a high or stable income, to the regular foreclosure procedures established for the traditional mortgagor-mortgagee relationship. The mortgagee has much to gain by a quick foreclosure. The mortgage is insured by a creature of the Federal government and the sooner the mortgage is foreclosed the sooner the mortgagee gets its money which may be reinvested at a greater rate of return.”
It is therefore obvious that precipitous foreclosures are inimical to the very objectives and purposes of the National Housing Act and should not be condoned by the courts. The act itself suggests alternative measures to foreclosure (US Code, tit 12, § 1710, subd [a]):
“And provided further, That with respect to any mortgage covering a one-, two-, three-, or four-family residence insured under this chapter, if the Secretary finds, after notice of default, that the default was due to circumstances beyond the control of the mortgagor, he may, upon such terms and conditions as he may prescribe, (1) approve the request of the mortgagee for an extension of the time for the curing of the default and of the time for commencing foreclosure proceedings or for otherwise acquiring title to the mortgaged property to such time as the Secretary may determine is necessary and desirable to enable the mortgagor to complete the mortgage payments, including an extension of time beyond the stated maturity of the mortgage * * * or (2) approve a modification of the terms of the mortgage for the purpose of changing the amortization provisions by recasting, over the remaining term of the mortgage or over such longer period as may be approved by the Secretary, the total unpaid amount then due, as determined by the Secretary with the modification to become effective currently or to become effective upon the determination of an agreed-upon extension of the period for procuring the default”.
The HUD regulations also provide for forbearance relief in the event of the mortgagor’s default (24 CFR 203.340, 203.342).
*825 While these provisions of the Act and the regulations are not couched in mandatory terms (Brown v Lynn, 385 F Supp 986, 997, supra), their intent is clear. Upon a mortgagor’s default the mortgagee is encouraged to pursue alternative measures and should only seek foreclosure relief as a last resort. The HUD Handbook reiterates this objective of foreclosure avoidance in unequivocal language (ch 1, par 2b; ch 7, par 101; ch 8, par 121), and then sets forth in great detail the procedural guidelines to be followed by the mortgagees in the implementation of the objective.
To allow the F.N.M.A. or any mortgagee under the program to ignore these HUD Handbook guidelines would be to permit it to subvert the very goal the program was established to achieve and to make a mockery of the National Housing Act. This court "cannot take part in a travesty upon the Congressional purpose” (F.N.M.A. v Huffman, supra). Consequently, notwithstanding the failure of HUD to publish its Handbook in the Federal Register, this court concludes that participating mortgagees under section 203 of the National Housing Act (US Code, tit 12, § 1709), and their assignees, are obligated to follow the guidelines established in the HUD Handbook in the event of a mortgagor’s default. Their failure to do so may constitute unconscionable conduct so as to deny the mortgagee the foreclosure relief it is seeking.
This court is not determining at this time the extent to which the mortgagee must comply with the HUD Handbook or whether in the instant case the plaintiff has or has not so complied; these matters are left for a trial of the action. Rather, for the purposes of the motion raised herein, this court holds that the defendants Ricks may interpose as a first defense the failure of the plaintiff to comply with the provisions of the HUD Handbook.
Accordingly, the plaintiff’s motion to dismiss the defenses of defendants Ricks is denied as regards their first defense.
Turning now to defendants Ricks’ second defense, they assert that the plaintiff is required by HUD to adopt "acceptable mortgage practices of prudent lending institutions” (24 CFR 203.9) in servicing their insured mortgages and that the HUD Handbook establishes the kinds of practices which, as a prudent lending institution, plaintiff must undertake prior to instituting a foreclosure action.
The court is constrained to disagree with this contention. Rather, we subscribe to the view of Judge Will in Brown v *826 Lynn (385 F Supp 986, 997-998) in dismissing the plaintiffs’ reliance upon section 203.9. He said:
"Plaintiffs’ concept of a prudent lending institution would appear to make the interests of a defaulting mortgagor paramount, placing them well before those of the institution attempting to protect its own investment. They maintain that, under the circumstances facing the plaintiffs in this case, a prudent lending institution would not only defer foreclosure proceedings, but would also actively pursue alternatives which would afford the mortgagors an opportunity to become current. They point to the other aforementioned regulations as well as the HUD guidelines as a source of these alternatives, which include, inter alia, accepting partial payments, recasting the mortgage, or assigning the mortgage to the FHA.
"While in many instances such alternatives are certainly preferable to foreclosure, the plaintiffs’ reliance on § 203.9 as a means of enforcing these alternatives is misplaced. The role of a prudent lending institution in the marketplace cannot be defined so narrowly as the plaintiffs suggest, but rather, the very nature of the mortgagees’ business and financial relationship with their clients also requires prudence in protecting their own investments. Section 203.9 itself proposes that the mortgagees should exercise 'due diligence in collecting amounts due.’ Their failure to do so may result in termination of the government’s guarantee against their losses. Accordingly, the ambiguous and multi-purpose concept of a prudent lending institution cannot be read to compel the mortgagees to seek alternatives to foreclosure where deficiencies in fact exist, and they have acted within the limits of the state foreclosure procedures.”
Further, the "irony and the inconsistency in the 'prudent lending’ practice is that a 'prudent lending institution’ would not have lent money to these mortgagors in the first place because of their marginal status” (F.N.M.A. v Huffman, supra).
Accordingly, the court finds that the defendants Ricks’ second defense is without merit and the plaintiff’s motion to dismiss same is hereby granted.
The defendants Ricks’ third defense is somewhat analogous to their first defense. They allege, and this is not disputed, that the mortgage being foreclosed herein is guaranteed by the Veterans Administration under title 38 of the United States Code (US Code, tit 38, § 1801 et seq.). Subdivision (d) of *827 section 1804 (US Code, tit 38) thereunder provides that the mortgagee (called holder under the act and regulations) in order to qualify for a guaranteed mortgage pursuant to the act, is required "to demonstrate proper ability to service loans adequately”. This provision is also incorporated in the regulations (38 CFR 36.4331[a]). It is the contention of defendants Ricks that the nature of this servicing is detailed in the Veterans Administration Lenders Handbook, Veterans Administration Pamphlet 26-7 revised, which contains pertinent provisions of the Code, regulations governing guaranteed and insured loans, along with a narrative statement of policy procedure.
A copy of the Handbook, as with the HUD Handbook, was not furnished this court, nor were the relevant sections reproduced and attached to Ricks’ memoranda of law, as they were with respect to the HUD Handbook. Nevertheless, defendants do cite and quote from certain paragraphs of the Lenders Handbook appearing in section 6, "Servicing of Guaranteed and Insured Loans”. For purposes of the motion herein to dismiss the defenses, the accuracy of these allegations must be assumed to be true (Jones v McNeill, 51 Misc 2d 527, 528). Paragraph 6011 of the Handbook states:
"The guarantee or insurance of a loan is in part predicated upon the understanding that adequate loan servicing will be performed by the holder.”
Paragraph 6012 says:
"It is the policy of the VA, consistent with the beneficial nature of the law, to encourage holders to extend all reasonable forbearance in the event a borrower becomes unable to meet the terms of his loan. Its purpose is to help the veteran-borrowers retain their homes, farms and businesses.” Paragraph 6013 provides:
"In any event, it is not expected that holders will file claims, or institute action to terminate loans, until every reasonable effort has been made to arrive at some other solution.”
Paragraph 6111, the last one cited by Ricks, states:
"The notice [of default] should not be given prematurely, i.e., before a conscientious effort to cure the default has been made. Indeed, the report cannot very well be filled out unless preceded by genuine servicing efforts.”
The defendants plead as their third defense that these *828 passages represent "regulations” and are binding conditions precedent to the foreclosure action with which the plaintiff has failed to comply.
The defendants admit in their first memorandum of law that the Lenders Handbook was not published in the Federal Register. It therefore was not promulgated pursuant to the publication requirements of the Administrative Procedure Act (US Code, tit 5, § 553, subd [b]; § 552, subd [a], par [1], cl [D]) and accordingly cannot be considered regulations having the force and effect of law (Thomas v County Office Committee of Cameron County, 327 F Supp 1244).
But should a court hearing a mortgage foreclosure action otherwise impose an equitable obligation on the mortgagee to comply with these very clear directives expressed in the Handbook before granting a mortgagee the relief it seeks? This court concludes yes, that a mortgagee’s failure to follow the directives would render the Handbook a nullity and therefore constitutes unconscionable conduct on the part of a mortgagee. Again, this court leaves for determination at the trial of this action the extent to which a mortgagee must comply with the Lenders Handbook, what constitutes compliance and whether the plaintiff herein has so complied.
Accordingly, the third defense of defendants Ricks has merit and plaintiff’s motion to dismiss this defense is denied.
The defendants’ fourth defense is founded upon paragraph 6013, section 6 of the Lenders Handbook, which requires the plaintiff to "follow accepted standards of loan servicing employed by prudent lenders generally in servicing their portfolios or similar type conventional loans.” Defendants contend that the Lenders Handbook establishes the kind of practices (citing the passages quoted above) which, as a prudent lending institution, plaintiff must undertake prior to instituting a foreclosure action.
For the same reasons expressed earlier in connection with the defendants’ second defense, the court finds that this defense has no merit and plaintiff’s motion to dismiss is granted as to the fourth defense.
Accordingly, plaintiffs motion to dismiss the defendants Ricks’ answer and to refer the action to a referee is denied. Its motion to dismiss the affirmative defenses contained in Ricks’ answer is granted as to the second and fourth defenses and denied as to the first and third defenses.
*829 Plaintiffs motion to amend the title of the action in accordance with plaintiffs attorney’s affidavit in support of the motion is granted, there being no opposition by defendants Ricks.