530 A.2d 919

**FLEET REAL ESTATE FUNDING CORP., Appellee,**

**v.**

**Robert SMITH and Vergie Smith.**

**Appeal of Vergie SMITH.**

Superior Court of Pennsylvania.

Argued Nov. 20, 1986.

Filed Sept. 3, 1987.

---

118

Irv Ackelberg, Philadelphia, for appellant.

Gary E. McCafferty, Philadelphia, for appellee.

Before CAVANAUGH, OLSZEWSKI and TAMILIA, JJ.

OLSZEWSKI, Judge:

Instantly, Vergie Smith appeals an order granting appellee's motion for summary judgment and denying her cross-motion for partial summary judgment in a mortgage foreclosure action. The trial court held that appellee had complied with the notice provisions of Act 6 of 1974, 41 P.S. § 101 *et seq.*, and that summary judgment was appropriate because appellant admitted that she was in default on the mortgage. Appellant contends on appeal that the trial court erred in: (1) declining to consider her defense that appellee failed to service the mortgage in accordance with federal law; and (2) concluding without discussion that she was not entitled to a $1,000 recoupment plus costs and attorney's fees due to violations of the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* Having reviewed the record and considered the arguments raised on appeal, we

reverse and remand for further proceedings. Jurisdiction is relinquished.

On October 23, 1970, appellant and her husband, who is now deceased, executed and delivered to the Fidelity Bond and Mortgage Company a mortgage upon their newly purchased residence. The mortgage is insured against default by the Federal Housing Administration (FHA) under Subchapter II of the National Housing Act, 12 U.S.C. § 1701 *et seq.* In conjunction with the mortgage transaction, appellant received a disclosure statement mandated by the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* Appellee, Fleet Real Estate Funding Corporation, subsequently obtained the mortgage by assignment from Fidelity Bond and Mortgage Company in November 1979.

Appellant defaulted upon the mortgage beginning in January of 1985.[1] Appellee sent appellant a notice of intention to foreclose on September 10, 1985 and then commenced foreclosure proceedings on October 24, 1985. This appeal followed the trial court's entry of summary judgment for appellee.

A motion for summary judgment may properly be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). *See also Washington Federal Savings & Loan Association v. Stein,* 357 Pa.Super. 286, 288–90, 515 A.2d 980, 981 (1986); *Rybas v. Wapner,* 311 Pa.Super. 50, 54, 457 A.2d 108, 109 (1983). In passing upon a motion for summary judgment, the court must examine the record in the light most favorable to the nonmoving party. *Pocono International Race-*

---

1. Appellant admits in paragraph 8 of her "Declaration" that she began missing mortgage payments in January of 1985. Explaining her default, appellant alleges, *inter alia,* that she became ill in November of 1984 and on doctor's orders, could not work from that time until the summer of 1985, and that she paid over $1,000 in utility bills in January and February of 1985 so as not to lose her utility service. Declaration of Vergie Smith, paragraphs 7 and 8.

*way, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 83, 468 A.2d 468, 470 (1983); *Zimmerman v. Zimmerman*, 322 Pa.Super. 121, 124, 469 A.2d 212, 213 (1983). "It is not part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried." *Thorsen v. Iron and Glass Bank*, 328 Pa.Super. 135, 141, 476 A.2d 928, 931 (1984); *Wilk v. Haus*, 313 Pa.Super. 479, 482, 460 A.2d 288, 290 (1983). Any doubt must be resolved against the moving party. *Washington Federal Savings & Loan Association, supra*, 286 Pa.Super. at 288–90, 515 A.2d at 981; *Chorba v. Davlisa Enterprises, Inc.*, 303 Pa.Super. 497, 500, 450 A.2d 36, 38 (1982).

Appellant argues that summary judgment for appellee was improper because she has raised disputed factual issues regarding appellee's servicing of her FHA-insured mortgage. Appellant contends that appellee failed to follow certain regulations and guidelines issued by the Department of Housing and Urban Development (HUD), which administers the National Housing Act's mortgage insurance program. The regulations are set forth at 24 C.F.R. §§ 203.500 through 203.660, while the guidelines are contained in HUD Handbook 4330.1, on Administration of Insured Home Mortgages. Both the regulations and the Handbook provisions identify practices, including methods of forbearance relief, which HUD considers acceptable for lending institutions servicing HUD–insured mortgages. Appellant maintains that she may raise appellee's alleged failure to follow these regulations and Handbook provisions as a defense to this foreclosure action.

While our appellate courts have never addressed this argument, federal courts have determined that the HUD Handbook is merely a statement of HUD policy, which does not have the force of law and which does not establish procedural prerequisites to foreclosure. In *Brown v. Lynn*, 385 F.Supp. 986 (N.D.Ill.1974) (hereinafter *Brown I*), plaintiffs contended that the mortgagee defendants had violated legally binding federal regulations by failing to pursue the prescribed alternatives to foreclosure outlined in the exist-

ing HUD Guidebook. The court rejected this contention, stating that:

> ... the HUD guidelines upon which the plaintiffs have particularly relied as a source for the "regulatory" scheme underlying the programs, have not been issued pursuant to the Administrative Procedure Act. As such, they only contain statements of policy and not regulations, per se, having the force and effect of law. *Faggins v. Kassler & Co.*, 72 C 125 (N.D.Ill., July 26, 1972). Statements of policy have no binding effect upon the mortgagees, *FHA v. Morris Plan Co.*, 211 F.2d 756 (9th Cir.1954), and are unenforceable in the courts. *Faggins, supra.* The guidelines, in their present form, therefore, cannot be used to require the mortgagees to pursue the alternatives listed therein, and, accordingly, do not give rise to a claim of duty owed or a remedy.

*Brown I, supra,* 385 F.Supp. at 998. The plaintiffs subsequently requested clarification and reconsideration of this aspect of the opinion. In *Brown v. Lynn,* 392 F.Supp. 559 (N.D.Ill.1975) (hereinafter *Brown II*), the court denied plaintiffs' motion for reconsideration, explaining that:

> [i]n the absence of impracticality or emergency, HUD's failure to publish the Guide or Handbook in the Federal Register violates the provisions of § 10.5 [of HUD's own "mini APA"], and consequently these publications cannot constitute rules or regulations. They are thus not legally binding upon the mortgagees and are not enforceable in a lawsuit such as this seeking monetary damages and injunctive relief.

*Brown II, supra,* 392 F.Supp. at 562. The court also noted that HUD's intention not to make the Handbook obligatory was further reflected in an affidavit submitted in another case by Fred W. Pfaender, Director of Loan Management for HUD and the person responsible for publishing the HUD Handbook. In that affidavit, Pfaender stated that:

> The Department does not intend to create, nor to imply the creation of vested rights in private citizens based on a mortgagee's non-compliance with the advisory guidelines

contained in Handbook 4191.1, nor to imply that the various forbearance provisions discussed in Handbook 4191.1 must be followed by mortgagees as conditions precedent to maintaining an action to foreclose an insured mortgage.

*Brown II, supra,* 392 F.Supp. at 562. Relying on this testimony and HUD's "purposeful avoidance of publishing the Handbook in the Federal Register," the court concluded that HUD did not intend the Handbook to be binding. *Id.*[2]

Subsequent to the decisions in *Brown I* and *Brown II,* HUD promulgated the mortgage servicing provisions contained in the Handbook as regulations. *See* 24 C.F.R. §§ 203.500 through 203.660. As a result, the precedential value of the holding of the *Brown* decisions that these provisions are merely statements of policy and non-binding has been considerably lessened. Nevertheless, a review of the regulations demonstrates that HUD has still declined to mandate compliance with the servicing provisions as a legal prerequisite to foreclosure. The regulations do mention HUD's position on this issue, but only with respect to the requirements concerning assignment of these mortgages to HUD. Specifically, 24 C.F.R. § 203.500 states that:

> [t]he Department takes no position on whether a mortgagee's failure to comply with §§ 203.650–203.662 is a legal defense to foreclosure; that is a matter to be determined by the courts.

Other than this provision, the regulations are silent on HUD's position as to whether a failure to comply with the servicing requirements of 24 C.F.R. §§ 203.500 through 203.660 is a legal defense to foreclosure. Rather than addressing the effect of a violation in a foreclosure action, the regulations focus on the mortgagee's relationship with HUD, providing that "a pattern of refusal or failure to comply will be the cause for withdrawal of a mortgagee's approval" as an FHA-insured mortgage lender. 24 C.F.R. § 203.500. In view of the foregoing, we conclude that

2.  *See also Hernandez v. Prudential Mortgage Corp.,* 553 F.2d 241 (1st Cir.1977); *Roberts v. Cameron-Brown Co.,* 556 F.2d 356 (5th Cir.1977).

federal law does not mandate that a mortgagee comply with the regulations and Handbook provisions prior to foreclosing on an FHA–insured mortgage.

■ Notwithstanding this conclusion, we believe that trial courts in Pennsylvania may exercise their equity powers to restrict a mortgagee who has not, within the reasonable expectations of good faith and fair dealing, followed or applied the forbearance provisions of the HUD regulations and Handbook. In *Brown II*, although holding that the Handbook was not legally binding and not enforceable in an action for monetary damages and injunctive relief, the court observed that its decision did not limit state or federal foreclosure courts "from exercising their equity powers by refusing to grant foreclosures where mortgagees have flagrantly disregarded the forbearance provisions of the HUD Handbook." *Brown II, supra,* 392 F.Supp. at 562. The court explained:

> That holding, however, does not preclude foreclosure courts from allowing mortgagors to raise non-compliance with the Handbook as a defense to a "quick" foreclosure. Somewhat analogous to the situation where HUD could suspend or terminate mortgagees for poor servicing practices, even though such conduct would not give rise to a lawsuit, so too, a court of equity may restrict a mortgagee who has not, within the reasonable expectations of good faith and fair dealing, followed or applied the guidelines.

> On the theory that the guidelines are sensible, equitable standards of conduct, consistent with, and issued in furtherance of, the national housing goals, foreclosure courts can, and in appropriate instances should, direct the parties to pursue and exhaust the alternatives to foreclosure enumerated in the Handbook. Merely rubber-stamping mortgagees' foreclosure actions, when they have acted barely within the formal legal bounds of these loosely defined housing programs, will contribute further to the needless loss of homes and to the creation of virtual ghost areas within our inner cities. Foreclosure

courts need not woodenly perpetuate the national tragedy surrounding quick foreclosures to which we referred in our earlier opinion, but, where appropriate, they should require adherence to the policies and procedures prescribed by the Handbook.

*Id.* at 563. At least three states have applied this reasoning in concluding that FHA lenders have an equitable obligation to follow the guidelines established in the HUD Handbook in the event of a mortgagor's default. *Federal National Mortgage Association v. Ricks*, 83 Misc.2d 814, 372 N.Y. S.2d 485 (1975); *Heritage Bank, N.A. v. Ruh*, 191 N.J.Super. 53, 465 A.2d 547 (1983); *Associated East Mortgage Company v. Young*, 163 N.J.Super. 315, 394 A.2d 899 (1978); *Cross v. Federal National Mortgage Association*, 359 So.2d 464 (Fla.App.1978). Today we follow the lead of these decisions and hold that a mortgagor of an FHA-insured mortgage may raise as an equitable defense to foreclosure, the mortgagee's deviation from compliance with the forbearance provisions of the HUD Handbook and regulations.[3]

We agree that these provisions contain "sensible, equitable standards of conduct, consistent with, and issued in furtherance of, the national housing goals." *Brown II, supra,* 392 F.Supp. at 563. The legislative purpose of the National Housing Act is to assist in providing a decent home and a suitable living environment for every American family. 12 U.S.C.A. § 1701t. The mortgage insurance program implements this goal by making available to low-income families, mortgages which they could not otherwise afford. *See* 12 U.S.C.A. § 1709. Given these goals and objectives, implementation must not end with the purchase of the home and the receipt of a mortgage by a low-income

---

3. We note that an action of mortgage foreclosure is an action at law in Pennsylvania, see Pa.R.C.P. 1141. Equitable relief is available in an action at law where such relief can be granted consistently with principles of law. Std.Pa.Prac.2d § 79:4. Because the rights of the parties to an FHA-insured mortgage have not been clearly established in Pennsylvania, we believe the equitable relief discussed in this opinion can be granted consistently with principles of Pennsylvania law.

family; retention of the home must be viewed with equal importance. In this regard, the remedy included in the HUD regulations is inadequate to protect the individual mortgagor. As the Appellate Court of Illinois has reasoned:

> H.U.D.'s withdrawal of a mortgagee's approval to participate in the mortgage insurance program after repeated violations of the servicing requirements is a useless remedy for the individual faced with the immediate problem of the foreclosure action; an action which could possibly be avoided by either assignment of the mortgage to H.U.D. or further efforts to arrange a revised payment plan.

*Banker's Life Company v. Denton*, 120 Ill.App.3d 576, 579, 76 Ill.Dec. 64, 66, 458 N.E.2d 203, 205 (1983). Finally, mortgagees benefit from participation in the HUD program since the risk of loss in cases of default is substantially reduced, if not eliminated. *See* 12 U.S.C.A. § 1710. If such mortgagees do not care to abide by HUD forbearance provisions, they should not participate in HUD's mortgage insurance program.

■ We have reviewed the pleadings and the affidavits filed in this case. Giving appellant the benefit of all reasonable inferences and resolving all doubts against appellee, we conclude that material facts are in dispute concerning appellee's alleged failure to adequately service the mortgage.[4] Summary judgment for appellee is therefore inappropriate in this case.

■ Appellant also argues to this Court that the trial court erred in entering summary judgment without considering her defense that she is entitled to a $1,000 recoupment plus costs and attorney's fees due to violations of the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (TILA). We note, for the purposes of remand, that appellant's TILA defense is not entitled to consideration in this action.

4. Appellant's "Declaration" states that at no time since the default began has her mortgage company offered to help her save her home from foreclosure. Declaration of Vergie Smith, paragraph 12.

The TILA is a federal consumer protection statute which, *inter alia*, requires prospective creditors to fully disclose the credit costs of a given loan to prospective debtors. *Household Consumer Discount v. Vespaziani*, 490 Pa. 209, 415 A.2d 689 (1980). Under 41 P.S. § 401, residential mortgage lenders must provide the disclosures required by the TILA to residential mortgage debtors.

A panel of this Court recently addressed a mortgagor's right to assert a set-off for an alleged violation of the TILA as a counterclaim to a mortgage foreclosure action. In *New York Guardian Mortgage Corporation v. Dietzel*, 362 Pa.Super. 426, 524 A.2d 951 (1987), the panel explained:

Section 1640(h) of the Act provides:

A person may not take any action to offset any amount for which a creditor is potentially liable to such person under subsection (a)(2) of this section against any amount owed by such person, *unless the amount of the creditor's or assignee's liability under this subchapter has been determined by judgment of a court* of competent jurisdiction in an action of which such person was a party. This subsection does not bar a consumer then in default on the obligation from asserting a violation of this subchapter as an original action, or as a defense *or counterclaim to an action to collect amounts owed* by the consumer brought by a person liable under this subchapter.

(Emphasis added). Additionally, § 1640(e) of the Act which is labelled "Jurisdiction of courts; limitations on actions" states:

This section does not bar a person from asserting a violation of this subchapter *in an action to collect the debt* which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action. . . .

(Emphasis added). These provisions make clear that a person can assert a claim under the Act only in an action for a money judgment either as a counterclaim to an action to collect money owed by the consumer, or in an

original claim brought by the consumer. Therefore, a counterclaim for a set-off under the Act can only be asserted in an action which contemplates a personal judgment.

An action in mortgage foreclosure is strictly an *in rem* proceeding, and the purpose of a judgment in mortgage foreclosure is solely to effect a judicial sale of the mortgaged property. *Meco Realty Co. v. Burns*, 414 Pa. 495, 200 A.2d 869 (1964). A judgment in a mortgage foreclosure action is not a judgment for money damages and therefore cannot be "an action to collect amounts owed" or "an action to collect the debt" as required under § 1640(h) and (e) of the Truth-In-Lending Act. Therefore, a set-off for an alleged violation of the Truth-In-Lending Act cannot be asserted as a counter-claim in a mortgage foreclosure action.

*Id.* In view of the foregoing, appellant cannot assert her TILA defense in this action.[5]

We reverse and remand for proceedings consistent with this opinion. Jurisdiction is relinquished.[6]

CAVANAUGH, J., files a dissenting opinion.

CAVANAUGH, Judge, dissenting:

I respectfully dissent.

I disagree with the majority's holding that a mortgagee's deviation from compliance with the forebearance provisions of the HUD Handbook and regulations may constitute an equitable defense to a foreclosure action. I believe this improperly expands the intended scope of the HUD regula-

---

5. We observe that the appellants in *New York Guardian Mortgage* asserted their right to set-off in a counterclaim, whereas the appellant in the instant case alleged her entitlement to set-off as a defense. This distinction, however, does not require that we depart from the rationale and holding of *New York Guardian Mortgage*. *See* 15 U.S.C. §§ 1640(h) and 1640(e), which both mention asserting a violation as a matter of defense.

6. We note that appellant also alleges on appeal that the trial court erred in entering summary judgment without determining the specific amount owing on the mortgage. In view of our decision to remand for further proceedings, we decline to address this question.

tions. I believe that the court's intervention in this area is improper, absent clear mandates from the legislature, and in the long run could result in diminished sources of mortgage funds.

In and of themselves, the HUD regulations are neutral as to whether non-compliance is a legal defense to foreclosure actions. *See*, e.g., 24 C.F.R. 203.500. However, the regulations do say that "a pattern of refusal or failure to comply will be the cause for withdrawal of a mortgagee's approval" as an FHA-insured mortgage lender. 24 C.F.R. 203.500. Thus, non-compliance with the HUD regulations may result in a sanction. However, that sanction is limited in two respects: 1) the sanction only concerns HUD's relationship with the mortgagee and in no way addresses the mortgagee's relationship or obligations with the mortgagors; and, (2) HUD may only raise the sanction where there is evidence of a *pattern of refusal or outright failure to comply* with its regulations. In other words, the sanction will not arise for a mere technical violation of some regulation.

I believe the majority errs in holding, without legislative or administrative mandate to do so, that these regulations are binding, with the force and effect of law, on the mortgagee vis a vis the mortgagor. This allows the individual mortgagor to rely on regulations which heretofore only HUD had the authority to apply. Further, the majority allows an equitable defense to arise where only a "deviation from compliance with the forebearance provisions of the HUD Handbook and regulations" is demonstrated. This goes far beyond *Brown v. Lynn*, 392 F.Supp. 559 (N.D.Ill. 1975), relied upon extensively by the majority, which limited use of the equitable defense to situations where "... mortgagees have *flagrantly disregarded* the forebearance provisions of the HUD Handbook." *Id.*, 392 F.Supp. at 562. Further, the majority's reference to decisions from sister states is not entirely persuasive. While the Florida decision provides some authority, the New York case, *Federal National Mortgage Association v. Ricks*, 83 Misc.2d 814, 372 N.Y.S.2d 485 (1975), is not an appellate decision. The

majority cites two New Jersey decisions. However, the latter New Jersey decision, *Heritage Bank N.A. v. Ruh*, 191 N.J. Super. 53, 465 A.2d 547 (1983), limited the earlier New Jersey decision, *Associated East Mortgage Company v. Young*, 163 N.J.Super. 315, 394 A.2d 899 (1978), to its facts which involved "[an] imprudent and callous lender" who approached the court with unclean hands given his "unconscionable" conduct in failing to follow the specific directions of the HUD Handbook. *Id.* at 333, 394 A.2d at 899. The court in *Heritage*, to the contrary, held that a mortgagor could not raise an equitable defense of a mortgagee's failure to follow the HUD regulations and procedures unless the mortgagee's conduct was "monstrously harsh" or "shocking to the conscience." *Heritage Bank N.A. v. Ruh*, 191 N.J.Super. at 71, 72, 465 A.2d 547, 557 (1983). The *Heritage* court, in denying the defendant-mortgagor's claim, stated:

> Further, defendant materially contributed to her predicament by failing to make any overtures in the beginning to plaintiff concerning her four months delinquency; failing to contact plaintiff about the default for nearly a year, and failing to show any good faith effort to make any payment into an escrow account until prompted by the court. Defendant's flagrantly acquiescent conduct does not induce the court to extend equitable relief to one to whom such culpable negligence can be attributed. The doctrine of clean hands has its logical justification only in consideration of good conscience and natural justice. There are cases in which a court of equity, fulfilling the reasons and objects for its existence may, in furtherance of a natural justice, aid one who is comparatively more innocent. (Citations omitted.)

*Id.* at 71–73, 465 A.2d at 557–558.

It is clear that the majority's decision, which would require a trial where defendant could demonstrate a mere violation of the HUD regulations, goes well beyond the cases it cites as authority for its position.

130

I respectfully dissent and would affirm the lower court's decision.