**GREEN TREE CONSUMER DISCOUNT CO.,**
**Appellee**

v.

**Herman NEWTON, Geneva Newton and Herman Newton, Jr.,**
**Appellants.**

Superior Court of Pennsylvania.

Argued June 20, 2006.

Filed Oct. 10, 2006.

Irv Ackelsberg, Philadelphia, for appellants.

Stuart Winneg, Cherry Hill, NJ, for appellee.

BEFORE: KLEIN, GANTMAN, JJ. and McEWEN, P.J.E.

OPINION BY KLEIN, J.:

¶ 1 Herman Newton and Geneva Newton and their son, Herman Newton, Jr. ("the Newtons"), appeal from a grant of summary judgment in mortgage foreclosure by the assignee of the mortgage, Green Tree Consumer Discount Company. Essentially, the Newtons claim that they were fraudulently induced into signing a mortgage document when buying aluminum siding. The distinguished trial judge said he "reluctantly" granted the motion for summary judgment because he believed he was bound by the almost twenty-year-old opinion of this Court in *New York*

*Guardian Mortgage Corp. v. Dietzel,* 362 Pa.Super. 426, 524 A.2d 951 (1987). While it is understandable that *Dietzel* might be read as the trial judge did, much of the relevant rationale in *Dietzel* is *dicta* and, more importantly, it specifically discussed the application of the Truth in Lending Act (TILA), 15 U.S.C. § 1640(e), (h), which is not at issue here. Rather, the Newtons have claimed fraud in the execution of the mortgage agreement. Because this claim is distinguishable from the factual scenario in *Dietzel,* and the Newtons have alleged enough facts that, if believed, would present a viable defense to the foreclosure, if not void the mortgage completely, summary judgment is not appropriate. Therefore, we reverse and remand for trial.

**Factual History**

¶ 2 In June 1998, the Newtons entered into an agreement to purchase new siding for their home from American Home Improvement Products, Inc., apparently a Sears-authorized contractor. At the time of the sale, the Newtons were allegedly told the new siding would provide added insulation to their home making it warmer in the winter and costing less to heat. The record provides no specific terms of financing for this $4,635 purchase, but there is indication that the Newtons were to make a $69.00 per month minimum payment. Shortly thereafter, in July 1998, an addendum to the contract indicates additional work to be performed, which raised the price to $6,243 and the minimum monthly

payment to $93.00. Also in July 1998, the Newtons apparently purchased three replacement windows at an additional cost of $3,102.[1] There are no specific financial agreements to be found in the record for this time period. There is merely an indication that the work is to be financed.

¶ 3 On October 1, 1998 the first financial documents were signed. The first of these is a Home Improvement Installment Contract. This contract indicates the Newtons to be financing the entire $9,345.00 cost of repairs at an annual percentage rate of 12.33%[2] over 15 years for a $114.00 monthly payment. The entire cost of the repairs, after 15 years, was to be $20,547.00. This Home Improvement Installment Contract (HIIC) appears to be a standard form document and contains not only the required Truth in Lending disclosures but also contains the required "Holder Clause." *See* 16 C.F.R. § 433.2. The holder clause indicates that any subsequent holder of the contract is subject to the same claims and defenses the debtor could assert against the seller of the goods.

¶ 4 The second document from October 1 is titled "Open–End Mortgage."[3] This document appears to transfer the consumer credit contract referred to above from American to the Plaintiff in this matter, Green Tree Consumer Discount Company. This document specifically refers to the retail installment contract. This docu-

---

1. All told, the Newtons apparently bought new siding, down spouts, windows, a door and soffit and fascia. The total cost was $9,345.00.

2. In one section of the document, the interest rate is stated as 11.820% per year. The Truth in Lending Disclosure section lists the annual credit rate at 12.33%.

3. It is not entirely clear that this was an "open-end" mortgage. An open-end mortgage

allows the borrower to continue borrowing under the mortgage. A closed-end mortgage is one where neither the property mortgaged nor the amount borrowed may be altered. Here, the mortgage document specifically limits the amount that can be borrowed under the mortgage to $9345.00, which is the exact amount owed for the repairs.

The type of mortgage may matter because under Pennsylvania Law, a closed-end contract is limited to a maximum 8% interest. *See* 73 P.S. § 500–301(a).

ment, like all the documents involved in this transaction, is signed by Geneva Newton, Herman Newton, and Herman Newton, Jr.[4] Herman Newton's signature is more properly referred to as a "mark" as it is simply an "x." In effect, this document secures the installment contract with the Newtons' home.

¶ 5 At some point in time[5] the Newtons grew dissatisfied with the repairs and stopped making payments on the debt. Green Tree then initiated this foreclosure action.

¶ 6 In defense of this action the Newtons claim they were never informed that they were signing a mortgage. Further, they claim that Herman Newton is mentally incompetent, illiterate and blind and thus legally incapable of signing a mortgage. They also claim that the repair work itself was not performed properly and that no insulation was ever installed underneath the new siding. In support of their claim, the Newtons submitted an expert report authored by Gerald Cooke, Ph.D.,[6] that concludes that Mr. Newton "did not have the capacity to understand that what he was signing was a mortgage document that could lead to forfeiture of the house if the mortgage was not paid" and that "he is not only illiterate but has been mentally retarded from birth and has never had the capacity to be financially competent." *See* Expert Report, 10/24/05 at 6. The Newtons supplied another expert report claiming that the actual value of the work performed was roughly $4,000 and the current cost of repairing the repair work would be roughly $9,000.

**Analysis**

¶ 7 We begin by noting that the general rule in Pennsylvania is that counterclaims in a mortgage foreclosure action are only permissible if they arise from the same transaction from which the plaintiff's cause of action arose. *See* Pa.R.C.P. 1148. This has been held to prevent a counterclaim for fraud in the inducement of a contract of sale of property, but allows a claim for fraud in the inducement of the mortgage itself. *See Cunningham v. McWilliams*, 714 A.2d 1054 (Pa.Super.1998). Here, the Newtons have raised fraud allegations in both the inducement to the sales contract and the mortgage. The trial court's reliance on *Dietzel, supra*, addresses only the claims regarding sales contract and recoupment. Fraud in the inducement of the mortgage is clearly a permissible counterclaim under Rule 1148.

¶ 8 Green Tree has produced a copy of a signed mortgage and in response the Newtons have claimed that the true nature of the document was not explained to them and that one of the alleged mortgagors was incompetent to sign the document. The Newtons' claims, if believed, could relieve them of their obligations under the mortgage. The evidence regarding these claims is undeveloped. The Newtons have supplied an affidavit signed by Geneva Newton that asserts no one discussed the existence of a mortgage with them. The Newtons have also supplied an

---

4. The record is unclear how Herman Newton, Jr. is involved in this matter. Newton, Jr. apparently has no ownership interest in the property in question, does not appear to live at the property, and there is no indication that he has any power of attorney to sign documents for either of his parents.

5. Because of the procedural posture of this matter, a grant of summary judgment based

on *Dietzel*, the record is undeveloped as to certain specifics of the factual history. This is understandable because if *Dietzel* controlled, these specifics would be immaterial to the outcome.

6. Dr. Cooke is a licensed clinical and forensic psychologist.

expert report supporting the Newtons' claim that Herman Newton is mentally incompetent to sign a financial document such as a mortgage.[7] There are clearly genuine issues of material fact left to be decided regarding the formation of the mortgage. As such, summary judgment is improper.

■■■ ¶ 9 Next, we examine the Newtons' counterclaims regarding recoupment. As noted above, the general rule is that a recoupment claim is an improper defense to a mortgage foreclosure. However, this action is not a typical mortgage foreclosure where the owners have taken out a loan to fund the purchase of a home and then defaulted on the payments. In such a situation the owners are not allowed to claim that they did not owe an obligation to make their mortgage payments because the seller of the house failed to tell them about a leaky basement. The sale of the home, with all attendant requirements for disclosure regarding the condition of the house, is a separate transaction from obtaining a mortgage. As such, Rule 1148 prevents that counterclaim.

¶ 10 This is a mortgage that is specifically related to the financing of a home improvement contract and incorporates the terms of that contract.[8] The assignment of the mortgage, the mortgage and the HIIC are all recorded together. *See* Mortgage Assignment, 10/21/98. As such we must consider the rules attendant to home improvement loans, such as 16 C.F.R. 433 and Pennsylvania's Home Im-

provement Finance Act, 73 P.S. § 500–101 *et seq.*

■■■ ¶ 11 Before we look at the specific applications of those rules and statutes, we note that *New York Guardian Mortgage Corp. v. Dietzel, supra,* relied upon by both Green Tree and the trial court, is not controlling law. In *Dietzel,* the defendant asserted the right to a set-off, pursuant to the Truth–In–Lending Act, 15 U.S.C. §§ 1640(e)(h), in a counterclaim. Our Court held that, based on the Act, Dietzel was not allowed to assert a TILA claim as a defense to a mortgage foreclosure.

> [TILA] provisions make clear that a person can assert a claim under the Act only in an action for a money judgment either as a counterclaim to an action or to collect money owed by the consumer, or in an original claim brought by the consumer. Therefore, a counterclaim for a set-off under the Act can only be asserted in an action which contemplates a personal judgment.
>
> An action in mortgage foreclosure is strictly an *in rem* proceeding, and the purpose of a mortgage foreclosure is solely to effect a judicial sale of the mortgaged property. A judgment in a mortgage foreclosure action is not a judgment for money damages and therefore cannot be an "action to collect amounts owed" or "an action to collect the debt" as required under § 1640(h) and (e) of the Truth–In–Lending Act. Therefore, a set-off for an alleged violation of the Truth–In–Lending Act can-

---

7. The Geneva Newton affidavit also claims that documents were presented to the Newtons in blank and that numbers were filled in after the fact. However, it is unclear if Geneva Newton means the HIIC or the mortgage or both documents.

8. The mortgage document alone states no terms for payment. The mortgage simply

limits the maximum obligation under the mortgage to $9,345.00. The mortgage does not even specifically state that the lender is actually owed any amount of money. Thus, the terms of the HIIC must be incorporated into the mortgage or there would be no way to foreclose on a mortgage that lists no amount owed nor any payment schedule.

not be asserted as a counter-claim in a mortgage foreclosure action.

524 A.2d at 430–31 (citations omitted).[9]

¶ 12 *Dietzel* states that a counterclaim for a set-off cannot be sustained under that specific clause of the TILA. It does not stand for the proposition that recoupment may never be a defense of a mortgage foreclosure. Here, the Newtons are making no claims under section 1640 of the TILA, thus the prohibition against a TILA set-off cannot be at issue and cannot be the basis for summary judgment.

¶ 13 The financing agreement, including the mortgage, in this matter properly falls under the auspices of the Home Improvement Finance Act (HIFA), 73 P.S. § 500–101 *et seq.* The relevant language in TILA, regarding the ability to raise the Act as a counterclaim, and which was relied on in *Dietzel*, is not found in HIFA. Rather, both federal and state law supports the ability of the consumer in a HIFA situation to raise recoupment as a defense. The Code of Federal Regulations mandates the following notice to be placed in all consumer credit contracts:

> Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

16 C.F.R. § 433.2.

¶ 14 This notice is found in the Home Improvement Installment Contract which was assigned to Green Tree. *See* HIIC, 10/1/98 at p. 3. The language of this required notice clearly tells both the consumer and the holder of the debt that the holder is subject to any and all defenses that could be raised against the seller of the services. Once Green Tree became the holder of the debt, as evidenced by the finance contract and mortgage, it became subject to the same defenses available against American Home Improvement Products, Inc., the seller of the goods and services. There can be no serious argument that claims of substandard work and fraud are not claims that could be raised against American Home Improvement.

¶ 15 Although we have found no Pennsylvania case directly on point, case law indicates that it is not beyond the power of the courts to exercise their powers of equity in foreclosure actions. In *Fleet Real Estate Funding Corp. v. Smith,* 366 Pa.Super. 116, 530 A.2d 919 (1987), our Court allowed the Smiths to raise an equitable defense to foreclosure based upon the mortgagee's failure to follow HUD guidelines, even though those guidelines do not have the force of law. In the matter currently before us, unlike *Smith,* the sub-

---

9. The actual language of TILA, as referenced in *Dietzel* is as follows:

A person may not take any action to offset any amount for which a creditor is potentially liable to such person under subsection (a)(2) of this section against any amount owed by such person, unless the amount of the creditor's or assignee's liability under this subchapter has been determined by judgment of a court of competent jurisdiction in an action of which such person was a party. This subsection does not bar a consumer then in default on the obligation from asserting a violation of this subchapter as an original action or *counterclaim to an action to collect amounts owed* by the consumer brought by a person liable under this subchapter.

15 U.S.C. § 1640(h). (Italics added.)

This section does not bar a person from asserting a violation of this subchapter in *an action to collect the debt* which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action. . . .

15 U.S.C. § 1640(e). (Italics added.)

stance of the holder notice has the force of law, as it has been published in the CFR. *See Beemus v. Interstate National Dealer Services, Inc.*, 823 A.2d 979 (Pa.Super.2003) (intent to exercise legislative power inferred from publication of rule in Code of Federal Regulations).

¶ 16 In *Beemus*, our Court held section 433.2 was clear and unambiguous and allowed a consumer-debtor to assert against the creditor-assignee of a consumer contract any and all defenses and affirmative claims of recovery the debtor would have been entitled to assert against the seller, had the contract not been assigned.

> The clear an unambiguous language of the contractual provision notifies all potential holders that, if they accept an assignment of the contract, they will be "stepping into the seller's shoes." The creditor/assignee will become "subject to" *any* claims or defenses the debtor can assert against the seller.

*Id.* at 986 (emphasis in original). *Beemus* is not directly on point because that case did not involve a mortgage. Nonetheless, it indicates Pennsylvania's recognition of the broad applicability of the holder notice.

¶ 17 We note that none of the cases cited by Green Tree in support of its contention that the Newtons may not claim recoupment interpret foreclosure law and HIFA. *Fleet Real Estate v. Smith, supra,* which allowed an equitable defense based upon HUD regulations, did not allow recoupment under TILA. Thus, *Smith* is inapplicable to these facts in the same way as *Dietzel,* also cited by Green Tree. Finally, Green Tree cites to *Chrysler First Business Credit Corp. v. Gourniak,* 411 Pa.Super. 259, 601 A.2d 338 (1992). *Gourniak* is a straight mortgage foreclosure case that does not rely on either TILA or HIFA. The Gourniaks simply claimed that the lender did not supply them with sufficient financing to rehabilitate their property or operate their business, thus leading to bankruptcy. The factual background in *Gourniak* has nothing to do with the situation present here and so is readily distinguishable.

¶ 18 The assignment of the mortgage to Green Tree might be seen as cutting off otherwise valid defenses for recoupment in much the same way a holder in due course is insulated from certain defenses if the holder takes the security without actual or constructive notice of those defenses. Section 500–208 of HIFA addresses this point and states that the assignee of the debt, in this case Green Tree, might avail itself of this insulation as long as it has provided written notice to debtor of the assignment and that notice contains three clauses, the specifics of which are not necessary to recite. If the notice is provided to the debtor, the debtor has only 15 days from the mailing of the notice to invoke the defenses that would have been available against seller. The record in this case contains no such written notice to the Newtons. Because no written notice has been given to the Newtons, Green Tree may not avail itself of section 500–208.

¶ 19 What we are left with is the realization that Green Tree accepted the assignment of the financing contract, which included the holder clause as required by federal law. That assignment is found at page 3 of the HIIC. The debt represented by the contract is specifically the basis of the mortgage, as referenced on page 2 of that document. Green Tree is attempting to avoid its obligations under both the language of the contract and the Code of Federal Regulations by ignoring the HIIC and claiming the mortgage has nothing to do with that transaction. Given that the HIIC and the mortgage were executed at the same time, signed by the same people and notarized by the same notary; given that the HIIC and the mortgage each

make reference to the other and the assignment, mortgage and HIIC are all recorded together; and given the Newtons' claims of fraud in the inducement of the sales contract and failure to perform under the contract, we cannot say that the facts support Green Tree to the point that it is entitled to summary judgment regarding the recoupment claims.

¶ 20 Order reversed.  Case remanded for trial.  Jurisdiction relinquished.

¶ 21 GANTMAN, J., concurs in the result.